**RICHLANDS MEDICAL ASSOCIATION,
d/b/a Mattie Williams
Hospital, Appellant,**

v.

**Patricia R. HARRIS, Secretary of the Department of Health, Education and Welfare; Blue Cross Association; Blue Cross of Southwestern Virginia, Appellees.**

No. 80–1393.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 5, 1981.

Decided June 18, 1981.

Thomas G. Shufflebarger, Richlands, Va. (Shufflebarger & McNease, Richlands, Va., on brief), and Wade W. Massie, Abingdon, Va. (Penn, Stuart, Eskridge & Jones, Abingdon, Va., on brief), for appellant.

Lynne D. Miller, Asst. Regional Atty., Philadelphia, Pa. (Stephanie W. Naidoff, Regional Atty., Dept. of HEW, Philadelphia, Pa., Faye S. Ehrenstamm, Asst. U. S. Atty., Roanoke, Va., on brief), for appellees.

Before WINTER, RUSSELL and PHILLIPS, Circuit Judges.

WINTER, Circuit Judge:

At issue in this appeal is the amount for which an association providing health care in a hospital that it rents may properly be reimbursed under the Medicare Act, 42 U.S.C. §§ 1395 *et seq.*, for rent which it pays to the lessors. For the fiscal year 1975, the Secretary of Health and Human Services disallowed reimbursement for the actual rent of $93,440 and allowed only $18,617, representing what the Secretary found to be the cost to the lessors of ownership of the property, *i. e.*, property taxes and depreciation. The Secretary's ruling was based upon the finding that the lessors were related to the association by common ownership or control. *See* 42 C.F.R. § 405.-427. The district court sustained the Secretary. While we agree that the Secretary's finding that the lessors were related to the association by common ownership or control must be affirmed, we conclude that the association is entitled to greater reimbursement than $18,617. We affirm in part and vacate and remand in part for a new determination of proper reimbursement.

I.

Richlands Medical Association (Association) is a professional association composed of four doctors, and it provides services to Medicare patients through the operation of Mattie Williams Hospital. The hospital, currently licensed for seventy-six beds, was built in 1914 in Richlands, Virginia, by Dr. William R. Williams, Sr. Dr. Williams owned and managed the facility until his death in 1943. Ownership of the property passed to his children, and until 1961 the hospital was operated by his son, Dr. James P. Williams. Upon the death of Dr. James P. Williams, his share of the property passed to other members of the Williams family, and these heirs then leased the hospital and all of its facilities and equipment to four physicians who were then on the hospital staff. In the following year these physicians formed the Association, a professional association required by law to be

comprised exclusively of doctors, for the purpose of leasing and operating the hospital. Since the death of Dr. James P. Williams, none of the Williams heirs is a doctor and none has any ownership interest in the Association. At one time the husband of one of the lessors was a member of the Association; however, he died before the rental was renegotiated in 1974.

In 1968 William R. Williams, Jr., one of the heirs and lessors, who had had experience in the administration of another hospital, was employed by the Association as administrator of Mattie Williams Hospital. He was still employed in that capacity in 1975, the cost year at issue in this case.

Prior to June 21, 1974, the Association paid a monthly rental of $4,600 for the hospital, and it had done so since 1965 or 1966.[1] On June 21, however, Mr. Williams requested a rent increase. The Association's Board promptly approved a rent increase to $7,000 per month as of July 1, 1974, and a further increase to $10,000 per month effective as of July 1975. These increases were approved even though the lease fixing the monthly rental at $4,600 did not expire until October 31, 1976. Evidence was adduced, however, to show that preceding Mr. Williams' request for a rent increase, the lessors had been approached by two different groups, each wanting to buy the hospital, and the lessors felt that they could sell the hospital for $2,000,000 or more. It was because of this that the rent increase was requested.[2]

The Medicare Act permits a hospital to recover the "reasonable cost" of providing hospital services to Medicare patients under statutory language which defines "reasonable cost" as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the effi-

cient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A) (1980). The Secretary is authorized to promulgate regulations defining the "methods to be used" in calculating reasonable cost. *Id.* The regulations undertake to fix the reimbursable costs of services furnished to a provider of health services by a "related" organization. The limitation on reimbursement and the definition of "related" organizations are contained in 42 C.F.R. § 405.427 which provides in pertinent part:

(a) *Principle.* Costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such cost must not exceed the price of comparable services, facilities, or supplies that could be purchased elsewhere.

(b) *Definitions.*—(1) *Related to provider.* Related to the provider means that the provider to a significant extent is associated or affiliated with or has control of or is controlled by the organization furnishing the services, facilities, or supplies.

(2) *Common ownership.* Common ownership exists when an individual or individuals possess significant ownership or equity in the provider and the institution or organization serving the provider.

(3) *Control.* Control exists where an individual or an organization has the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution.

(c) *Application.* . . .

---

1. There is some confusion in the record as to the amount of rent paid in 1968. Mr. Williams testified that rent was set at $4,800 per month in 1965 or 1966, and remained at that figure until July 1, 1974. The opinion of the district court states that the rent was $4,800. Several documents in the record and the decision of the Secretary, however, note that the rent was $4,600 per month before the 1974 increase.

2. The lease also provides that in the event of its termination all of the Association's accounts receivable shall become the property of the lessors. This contractual undertaking existed even prior to the lease in effect in 1975. At least in theory, it would have provided the lessors with some degree of economic leverage in renegotiating the lease.

(2) Where the provider obtains items of services, facilities, or supplies from an organization, even though it is a separate legal entity, and the organization is owned or controlled by the owner(s) of the provider, in effect the items are obtained from itself. An example would be a corporation building a hospital or a nursing home and then leasing it to another corporation controlled by the owner. Therefore, reimbursable cost should include the costs for these items at the cost to the supplying organization.

In 1972, the Secretary through his authorized intermediaries,[3] Blue Cross Association and Blue Cross of Southwestern Virginia, challenged full reimbursement for rent on the ground that the Association and the lessors were "related organizations." With respect to that year, the intermediaries found that they were not. For the year 1975, however, the intermediaries once again challenged full reimbursement, and this time they concluded that the Association should be reimbursed only for the cost of ownership to the lessors. When the Association took an administrative appeal from this decision to the Provider Reimbursement Review Board, the Board also concluded that the Association and the lessors were "related", but it decided that the Association should be reimbursed on the basis of the rent paid on 1968, the year Mr. Williams was employed as administrator, plus an inflation factor as reflected by the Consumer Price Index. The Secretary, however, on further review, allowed reimbursement solely for the cost of ownership. This suit followed. The district court ruled that the Secretary's decision was not arbitrary, capricious or contrary to law and that it was supported by substantial evidence. Accordingly it affirmed the Secretary's decision.

## II.

■ Our scope of review of the Secretary's decision is a limited one. We are empowered to determine only if the Secretary's findings and conclusions are supported by substantial evidence and are not arbitrary, capricious or otherwise contrary to law. 5 U.S.C. § 706, as made applicable by 42 U.S.C. § 1395oo(f). In agreement with the district court, we think that the Secretary's determination that the Association and the lessors are "related organization[s]" within the meaning of the regulations must be sustained under this standard of review. As the district court pointed out, the long-standing relationship between the parties, the provision of the lease vesting the accounts receivable in the lessors upon termination of the lease, and, as the Secretary stresses, the employment of Mr. Williams, one of the lessors, as administrator of the Association and the facility with which *his* request for a major rent increase was granted provide a substantial evidentiary basis from which the Secretary could conclude that the lessors had the power significantly to influence the Association's decision to increase the rent. Thus, the Secretary could properly find that the lessors exercised "control" over the Association, so as to make the two entities "related" within the meaning of the regulations.

■ With regard to this point, we reject the argument that the administrative determination that the organizations were not "related" with respect to reimbursement for 1972 is *res judicata* for the year 1975. The letter advising the Association of the final decision in the 1972 administrative determination specified that the determination was limited to that year and only to those subsequent years in which there was no change in circumstance. As the facts indicate, there was a change in circumstance after 1972. We have said that *res*

**3.** 42 U.S.C. § 1395h authorizes the Secretary to enter into an agreement with any "public or private agency or organization" delegating to that agency or organization the authority, subject to review by the Secretary, to determine the amount of reimbursement due to providers of medical services to Medicare patients. Blue Cross Association (BCA) is the Secretary's authorized fiscal intermediary under this section and Blue Cross of Southwestern Virginia acts as a local agent of BCA.

*judicata* in the administrative setting "is not encrusted with the rigid finality that characterizes the precept in judicial proceedings." *Grose v. Cohen*, 406 F.2d 823, 824 (4 Cir. 1969). In a similar vein, we have held that a "finding subject to being . . . reopened provides an inappropriate bar to further adjudication if new evidence offered may result in a different determination." *Harmon v. Califano*, 596 F.2d 621, 623 (4 Cir. 1979). Here the events surrounding the substantial rent increase in 1974 provide sufficient new evidence to justify reconsideration by the Secretary.

### III.

Having concluded that the Secretary's determination of relatedness is unassailable, we reach the more difficult question that this appeal presents: what is the proper measure of the Association's right to reimbursement for the $93,440 rent that it pays? The regulations do not explicitly provide the answer. They adopt as the measure "cost to the related organization," but nowhere do they set forth the elements of that cost. In the absence of more explicit regulatory guidelines, we believe the measure of "cost to the related organization" must be determined through consideration of the evils the Medicare statute and regulations seek to avoid.

Cases dealing with the "related organization" doctrine embodied in 42 C.F.R. § 405.-427 have described two sources of unnecessary health care costs which the regulations seek to exclude from the scope of Medicare coverage. First, the regulations seek to avoid the "double" or "intra-company" profit which results where a provider purchases goods or services from a supplier to which it is related. *See Pasadena Hospital Ass'n v. United States*, 618 F.2d 728, 733 (Ct.Cl.1980). The example set forth in subsection (c)(2) of the regulation reflects the concern that Medicare funds should not be used to reimburse a provider for the purchase of items where "in effect the items are obtained from itself." This concern, however, logically extends only to cases where provider and supplier are related through ownership, for only then is it true that the provider may generate intra-company profits by dealing with "itself." In such cases the regulations reflect a policy judgment that such profits will not be reimbursed even though the amount paid by a provider to its related organization may be "reasonable." *Pasadena Hospital Ass'n v. United States, supra,* 618 F.2d at 732–33.[4]

Where provider and supplier are related only through "control," however, the evil to which the regulations are directed is somewhat different. In cases of relation through control, the inflation in health care costs, if any, results from the absence of normal competitive forces. The danger inherent in "controlled" dealings between provider and supplier is that the price of goods or services will be established through collusion rather than through arms-length dealing. *See Fairfax Hospital Ass'n v. Califano*, 585 F.2d 602, 607 (4 Cir. 1978).

In such cases, it is rational for the Secretary to offer reimbursement only "at the price which normally hospitals similar to the 'related' hospital—provider" must pay in a competitive market for similar goods or services. *Id.* But by the same token, where there is control only by influence, and the record provides a basis for determining the price that would be fixed as a result of arms-length bargaining, we see no justification for limiting the amount of reimbursement to a figure substantially below that "market" price. In the absence of a more compelling indication that Congress or the Secretary intended a contrary result, we see no warrant for construing the definition of "cost to the related organization" to exclude amounts which that organization may have obtained from the provider through legitimate arms-length negotiations.

---

4. The opinion in *Pasadena Hospital Ass'n* does not disclose whether the hospital and the trust from which it leased its land and buildings were related through ownership or only through control. To the extent that the Court of Claims there dealt with a case involving common ownership, our opinions are thoroughly consistent.

In this case the rent set before 1968, the year Mr. Williams was employed as hospital administrator, provides a useful starting point for determining the amount of rent that arms-length bargaining would have produced. The Provider Reimbursement Review Board found that the Association and the lessors became "related" as of that year and calculated reimbursement for 1975 by adjusting the rent in effect in 1968 to reflect the impact of inflation. The Secretary modified that conclusion, however, principally because she found that the Association and the lessors were "related" as early as 1961.[5] The Secretary has not relied upon that conclusion on appeal and, at oral argument, counsel for the Secretary virtually conceded that the lessors and the Association became "related" organizations only upon the advent of Mr. Williams' employment as administrator. We therefore reject as unsupported by substantial evidence the Secretary's finding that the organizations were related before 1968. In agreement with the Provider Reimbursement Review Board, we find that the rent established before Mr. Williams' employment was fixed as a result of arms-length bargaining. Absent evidence from the Secretary that the arms-length bargaining produced a rent in excess of that of a comparable property which could be rented elsewhere, 42 C.F.R. § 405.427(a), that rent should be the base for computing reimbursable cost. Also in agreement with the Provider Reimbursement Review Board, we think that when the rent negotiated prior to 1968 is used as the measure of reimbursement in 1975, it must be adjusted by reference to the Consumer Price Index or other recognized measure of inflation to reflect what arms-length bargaining in the marketplace of 1975 would have produced.

On remand the district court should return the case to the Secretary for recomputation of the reimbursement for rent to which the Association is entitled in accordance with the views expressed herein.

AFFIRMED IN PART; VACATED IN PART; AND REMANDED.

---

5. This conclusion apparently rests on a portion of Mr. Williams' testimony which the Secretary interpreted as an admission by Mr. Williams that he possessed the power, prior to 1968, to fire the hospital administrator and take over the job himself. On appeal the Secretary has not relied on this finding which, in any event, we would be compelled to reject for lack of support in the record. Our reading of Mr. Williams' testimony clearly indicates that he acted at the direction of the Association when he replaced the hospital administrator in 1968.