116 F.3d 486
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rickey GREGORY, Defendant-Appellant.
 No. 96-10300.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted March 13, 1997.
Decided May 30, 1997.
 
 1
 Appeal from the United States District Court for the Eastern District of California, No. CR-95-05125-MDC; M.D. Crocker, District Judge, Presiding.
 
 
 2
 Before: CANBY and RYMER, C.J., and EZRA,* D.J.
 
 
 3
 MEMORANDUM**
 
 
 4
 Rickey Gregory appeals his jury conviction on nine counts of mail fraud, in violation of 18 U.S.C. § 1341. Gregory argues that: (1) there was insufficient evidence to sustain his convictions; (2) the district court erroneously calculated the amount of loss that resulted from his fraudulent scheme; and (3) the district court erred in setting the amount of restitution. We affirm.
 
 
 5
 * Because the parties are familiar with the facts of this case, we state them here only as necessary.
 
 II
 
 6
 Gregory initially contends that the evidence was insufficient to support his conviction on Counts One through Three. Those counts correspond to FFIC's mailing of permanent disability checks to Gregory on March 7, 18, and 28, 1994. Gregory argues that there was insufficient evidence of a scheme to defraud because the government failed to prove that he made a false statement. See United States v. Benny, 786 F.2d 1410, 1418 (9th Cir.1986) ("Proof of an affirmative, material misrepresentation supports conviction of mail fraud"). According to Gregory, no evidence was introduced that he made any false statement to Fireman's Fund "between the time that [he] first made his claim for worker's compensation benefits to Fireman's Fund, June 30, 1992, until the checks in Counts One through Three were mailed."
 
 
 7
 Gregory is incorrect: as alleged in the indictment, his initial submission of his claim for workers' compensation benefits on June 30, 1992, included a material false statement. Gregory represented to FFIC that, as a result of his being injured while pulling and carrying a sheet of steel at Dailey Body Company, he was unable to work and thus eligible for workers' compensation benefits. At least four government witnesses, however, contradicted his statement of inability to work. Joe Almeida testified that Gregory worked on a pit crew at Stockton 99 Raceway during the summers of 1992 and 1993, a job that involved physical labor and body work on the race-car. Stacey Smith, Gregory's brother-in-law, testified that Gregory remodeled the bathroom in his home in September, 1992, for which he was paid approximately $1500. Virginia Roddy testified that Gregory remodeled her bathroom as well, in December, 1992, for which he was paid $2000. Frankie Keaney testified that he worked with Gregory in Gregory's tree-trimming business in the summer of 1992, and that during that time he saw Gregory climb eleven tall trees using spikes and a rope while carrying a chain saw. Finally, James M. Coffee testified that Gregory began working as a welder at Luper's Tank and Trailer on March 14, 1994, for which he was paid $9/hour.
 
 
 8
 In light of this testimony, a rational trier of fact could have found beyond a reasonable doubt that Gregory made a false statement to FFIC in order fraudulently to obtain workers' compensation benefits. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). The evidence, therefore, was sufficient to sustain Gregory's conviction on Counts One through Three.
 
 III
 
 9
 Gregory also contends that the mailing alleged in Count Four, the verification letter prepared by Shelly Larson that he signed and mailed back to FFIC, was insufficient to support his conviction on Count Four. Gregory points out that, at the time of the mailing alleged in Count Four, his benefit checks had already been mailed to him; he thus argues that the verification letter could not have "caused a use of the mails," as required by United States v. Manarite, 44 F.3d 1407, 1411 (9th Cir.1995).
 
 
 10
 Gregory's argument is without merit. A direct causal connection is not required between a predicate mailing and the receipt of the money or benefit targeted by a fraudulent scheme; all that is required "is that the mailings somehow contribute to the success of the scheme." United States v. Halbert, 640 F.2d 1000, 1009 (9th Cir.1981) Gregory may be convicted of mail fraud on the basis of a subsequent mailing if it was "designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendant[ ] less likely." United States v. Maze, 414 U.S. 395, 403 (1974). This condition is met here. The evidence indicated that Gregory's workers' compensation claim was still open at the time Gregory mailed the verification letter to FFIC. As a result, a rational trier of fact could have found that Gregory sent the verification letter as part of a lulling scheme directed at FFIC. The evidence at trial was thus sufficient to sustain Gregory's conviction on Count Four.
 
 IV
 
 11
 Gregory next contends that the evidence was insufficient to sustain his conviction on Counts Five through Nine, because the government failed to prove that he made any material misrepresentations to the Merced County Human Services Agency. The government alleged two such misrepresentations in the indictment: (1) Gregory's omission of his work as a welder at Luper's Tank and Trailer from question 14 of the welfare application, which required him to list his employment for the preceding five years; and (2) Gregory's omission of the benefits he received from FFIC from question 26 of the welfare application, which asked him whether anyone in his family had "sold, spent, traded, or given away any real estate, or personal property, in the last two years; such as ... money from a legal or accident insurance settlement." In Gregory's view, the government not only failed to prove that those representations were false, it also failed to prove that those representations were material, because "no evidence was introduced to show that the Department of Social Services relied on this information in granting the benefits."
 
 
 12
 Neither argument is correct. A rational trier of fact could have found that Gregory's answer to question 14 was false. Coffee testified that Gregory began working as a welder at Luper's Tank and Trailer on March 14, 1994, for which he was paid $9/hour. Similarly, in light of Gregory's representations in the welfare application that he had no assets, the jury properly could have found that he falsely stated in answer to question 26 that he had not spent or otherwise disposed of any "money from a legal or accident insurance settlement." The government's evidence established that Gregory had received a $53,000 workers' compensation settlement only four months earlier.
 
 
 13
 Gregory's second argument is also without merit. "A misrepresentation may be material without inducing any actual reliance. What is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose." Halbert, 640 F.2d at 1009. In order to prove materiality, the government needed to show only that Gregory's misrepresentations had the "propensity or capacity" to influence the Agency's computation of Gregory's welfare benefits. United States v. Mayberry, 913 F.2d 719, 723 (9th Cir.1990). The government satisfied that standard. In light of Millsap's testimony that all of the information in Gregory's application would be used to determine his eligibility for cash aid and food stamps, a rational trier of fact could have found that Gregory's misrepresentations had the "propensity or capacity" to influence the Agency to pay him greater benefits than it would have otherwise.
 
 
 14
 We conclude, therefore, that the evidence was sufficient to sustain Gregory's conviction on Counts Five through Nine.
 
 V
 
 15
 Gregory asserts that the district court erroneously calculated the amount of loss caused by his scheme to defraud, "because it fail[ed] to take into account what, if any, benefits [he] would have been entitled to receive if the victims were correctly informed of the facts." Gregory's presentence report ("PSR") determined the total amount of loss by adding up the benefits he received from FFIC and from the Agency. The report concluded that the total amount of loss was $119,797.99. The district court accepted that amount and increased Gregory's base-offense level by six levels pursuant to U.S.S.G. § 2F1.1(b)(1)(G), which requires such an increase when the total amount of loss is between $70,000 and $120,000.
 
 
 16
 The district court's calculation is not clearly erroneous.[1] The district court accepted the PSR's determination that the loss resulting from Gregory's scheme to defraud FFIC amounted to $112,647 while the loss to the Agency amounted to $7,150. Of that total amount of benefits, the district court found that $85,000 had been paid directly to Gregory. Those findings adequately support the district court's calculation of the amount of loss.[2]
 
 VI
 
 17
 Finally, Gregory contends that the district court erred in setting the amount of restitution. According to Gregory, "the court failed to properly determine the amount of restitution because ... it failed to determine the amount the victims would have reduced the appellant's benefits to if they had been aware of the false statement." As we have already pointed out, however, there is no evidence concerning what, if any, benefits Gregory might have been entitled to if he had made truthful applications.
 
 
 18
 The district court's restitution order was within its discretion. See United States v. Pappadopoulos, 64 F.3d 522, 530 (9th Cir.1995) (restitution order within statutory framework is reviewed for abuse of discretion). The Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, provides for restitution for violations of Title 18, which includes the mail fraud statute. United States v. Woodley, 9 F.3d 774, 780 (9th Cir.1993) (amended). Under the VWPA,
 
 
 19
 a court may order restitution so long as payment is made to a positively identifiable victim of a fraudulent scheme in a definite amount that is supported by the evidence, limited by the victim's actual losses, and judicially established in a proceeding in which the defendant has the opportunity to refute the amount ordered.
 
 
 20
 Id. The VWPA does not require specific findings on these factors; the record need only reflect 1) "that the district judge had at his disposal information bearing on the considerations enumerated in section 3664" and 2) "that the judge gave thought to the relevant information." United States v. Mills, 991 F.2d 609, 611 (9th Cir.1993).
 
 
 21
 Here, the record shows that the district court's restitution order was within the bounds of the statutory framework. The district court had before it the PSR, which set forth the justification for the amount of restitution the district court imposed. Both victims of the fraud were clearly identified, and both amounts were specifically alleged in the indictment, were not disputed at sentencing, and were supported by the evidence in the record. The district court explicitly considered Gregory's ability to pay, having reviewed the PSR's information regarding Gregory's education level, employment record, and assets.
 
 
 22
 We conclude, therefore, that the district court did not abuse its discretion in setting the amount of restitution.
 
 VII
 Gregory's convictions and sentence are
 
 23
 AFFIRMED.
 
 
 
 *
 The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 We review for clear error a district court's findings regarding the amount of loss. United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992)
 
 
 [2]
 We decline to address Gregory's argument that the amount of loss should be offset by the amount of benefits he legitimately would have received, because there is no evidence in the record indicating that Gregory was entitled to any of the benefits that he fraudulently obtained