John William CREWS, Plaintiff,

v.

Donna E. SHALALA, Secretary, United States Department of Health and Human Services, Defendant.

No. Civ.A. 3:98CV451.

United States District Court,
E.D. Virginia,
Richmond Division.

Feb. 3, 1999.

Peter Mason Mellette, Crews & Hancock, Richmond, VA, Jeannie Aylor Adams, Crews & Hancock, P.L.C., Richmond, VA, for John William Crews, plaintiff.

Brian D. Miller, U.S. Attorney's Office, Alexandria, VA, for Donna Shalala, Sec., Secretary, United States Department of Health and Human Services, defendant.

### FINAL ORDER

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons stated in the accompanying Memorandum Opinion, the Court GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for summary judgment. The Clerk is DIRECTED to enter judgment in defendant's favor on all counts of plaintiff's complaint. This case is DISMISSED WITH PREJUDICE.

It is so Ordered.

Let the Clerk send a copy of this Order and the accompanying Memorandum Opinion to all counsel of record.

### MEMORANDUM OPINION

This action was filed under the Social Security Act, 42 U.S.C. § 405(g) ("Section 205(g)") appealing an administrative decision to exclude the plaintiff from eligibility for certain federal programs. The parties agree that it should be determined as a matter of law. The matter is currently before the Court on the parties' cross-motions for summary judgment.

## FACTS

The facts of this case are undisputed. Plaintiff John William Crews ("Crews") served as a licensed nursing home administrator for Grace Lodge Nursing Home ("Grace Lodge") in Lynchburg, Virginia. This action arose when defendant Donna Shalala, (the "Secretary") excluded Crews from eligibility to participate in the Medicare, Medicaid, Maternal and Child Health Services Block Grants to States for Social Security Programs (the "Medicare Programs").

Crews became administrator of Grace Lodge on December 16, 1990. During unannounced inspections in the years between 1991 and 1994, officials documented Grace Lodge's repeated noncompliance with state and federal requirements for long-term care facilities [1] as well as Crews' alleged failure to complete a continuing education program in 1994. On January 30, 1996, the Virginia Board of Nursing Home Administrators (the "Board") wrote Crews a letter informing him of a pending investigation and the possibility of "disciplinary sanction[s] in the form of a Consent Order." The same letter made clear to Crews that anything less than an exoneration by the Informal Conference Committee would result in the referral of the matter "for a formal hearing in accordance with § 9–6.14:12." *See* Va.Code Ann. § 9–6.14:12 (prescribing procedures for formal proceedings). On February 28, 1996, the Board convened an "Informal Conference Committee" to investigate these alleged shortcomings. The committee concluded that plaintiff's actions as administrator of Grace Lodge were substandard and in violation of several state and federal regulations. The full Board later adopted the committee's findings.

On March 31, 1996, Crews' license expired. He did not seek relicensure and does not intend to do so. On July 10, 1996, Crews and the Board executed a consent order (the "Consent Order") that "waive[d] all rights to a formal hearing." The Consent Order accepted Crews' "SURRENDER" of his license "in lieu of further proceedings affecting the license of Mr. Crews." (All capital type in original). In the Consent Order, Crews "admit[ted] the truth of the above Findings of Fact but specifically denie[d] the conclusions of law reached by the Board in this matter." The Consent Order did not prohibit him from applying for reinstatement as a nursing home administrator.

In a letter dated February 21, 1997, HHS informed Crews that he was " . . . being excluded from participation in the [Medicare Programs] as authorized by section 1128(b)(4) of the Act." *See* 42 U.S.C. § 1320a–7b(B)(4) ("Section 1128(b)(4)"). The letter cited the Consent Order as the basis for the exclusion. The exclusion is effective until relicensure. On May 6, 1997, Crews received a letter from the United States Office of Personnel Management ("OPM") proposing to debar him from all federal assistance, benefits and contracting programs. The debarment is a direct result of the exclusion from the Medicare Programs.

Crews contested both the exclusion and debarment. On March 26, 1997, Crews timely requested a hearing challenging the exclusion before an Administrative Law Judge ("ALJ"). Crews twice requested oral argument. However, on October 28, 1997, the ALJ entered an order denying Crews' request for oral argument. In addition, the ALJ accepted and apparently considered a reply brief submitted by the Secretary when none was submitted by Crews. In a letter dated June 17, 1997, Crews contested OPM's debarment.

---

1. The deficiencies include: failing to report abuse to proper authorities; failing to ensure that physicians examined residents once every sixty (60) days; exceeding the maximum capacity of licensed beds; administering antipsychotic medications to a patient absent a diagnosis requiring such medication; failing to have a registered nurse on duty at all times; failing to appoint a Director of Nursing; and several other less serious deficiencies.

On December 5, 1997, the ALJ issued a decision upholding the exclusion from the Medicare Program. Crews timely appealed to the Departmental Appeals Board ("DAB"). On May 13, 1998, the DAB issued a letter to Crews declining to review the exclusion from the Medicare Program. In accord with state law, Crews' exclusion is disseminated on the Internet. In a letter dated June 10, 1997, OPM informed Crews that his debarment from other federal programs became effective on June 13, 1997.

### THE COMPLAINT

Count I of the Complaint alleges that the Secretary's exclusion of Crews from participation in the Medicare Programs is not supported by substantial evidence as required by Section 1128(b)(4) of the Act. Count II of the Complaint alleges that the Secretary's exclusion of Crews from participation in the Medicare Programs is erroneous and not in accordance with the law in violation of Section 1128(b)(4). Count III of the Complaint alleges that the Secretary's exclusion of Crews from participation in the Medicare Programs is a violation of his constitutional right to due process.

### LEGAL ANALYSIS

This matter is before the Court on the parties' cross-motions for summary judgment. Summary judgment be granted if, after consideration of such items as depositions, affidavits or certifications, and after viewing the facts in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As noted above, the parties agree that there exist no genuine issues of material fact and that matter is ripe for adjudication as a matter of law.

This is a case of statutory interpretation. Specifically, the parties disagree as to whether the Secretary's exclusion of Crews from the Medicare Programs under Section 1128(b)(4) of the Social Security Act is legal. Section 1128(b)(4) allows the Secretary to exclude

> Any individual or entity ... (A) whose *license to provide health care* has been revoked or suspended by any State licensing authority, *or who otherwise lost such a license* or the right to apply for or renew such a license, for reasons bearing on the individual's or entity's professional competence, professional performance, or financial integrity, or (B) *who surrendered such a license while a formal disciplinary proceeding was pending* before such an authority and the proceeding concerned the individual's or the entity's professional competence, professional performance, or financial integrity

"from participation in any Federal health care program...." *See* 42 U.S.C. § 1320a–7(b)(4) (emphasis added).

Plaintiff argues that he is not subject to the exclusion sanctions provided for by Section 1128(b)(4) for three separate reasons. First, he maintains that his nursing home administrator's license is not a "license to provide health care." Second, he argues that he did not "surrender" his license as a nursing home administrator but rather allowed it to expire. Third, he maintains that the proceedings from which the Consent Order resulted were "informal" rather than formal. The Secretary rejected Crews' interpretation of Section 1128(b)(4) and excluded him from the Medicare Programs. Crews unsuccessfully challenged the Secretary's interpretation of Section 1128(b)(4) at the administrative level. He has now exhausted all administrative remedies and timely filed this appeal pursuant to Section 205(g) of the Social Security Act. *See* 42 U.S.C. § 405(g).

■ This Court's standard of review in cases governed by Section 205(g) is limited. *See Richlands Medical Ass'n v. Har-*

*ris,* 651 F.2d 931, 934 (4th Cir.1981) ("We are empowered to determine only if the Secretary's findings and conclusions are supported by substantial evidence and are not arbitrary, capricious, or otherwise contrary to law."). The Secretary's interpretation is entitled to substantial weight. *Shalala v. Guernsey Mem. Hosp.,* 514 U.S. 87, 115 S.Ct. 1232, 1236, 131 L.Ed.2d 106 (1995). Her interpretation of regulations and statutes may occur through administrative adjudication. *Id.,* 115 S.Ct. at 1237. Accordingly, if the Court finds that a reasonable mind might determine the Secretary's interpretation of Section 1128(b)(4) to be adequately supported by relevant evidence, then the Court should affirm the Secretary's decision. *Pleasant Valley Hospital, Inc. v. Shalala,* 32 F.3d 67, 70 (4th Cir.1994). This deference is especially warranted when the statute at issue, as here, "entail[s] the exercise of judgment grounded in policy concerns." *Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 697, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991).

■ With this deferential standard of review in mind, the Court next considers the Secretary's construction of Section 1128(b)(4). The Court must first determine whether a license to perform as a nursing home administrator constitutes a "license to provide health care" for the purposes of Section 1128(b)(4). The parties agree that Crews' nursing home administrator's license did not authorize him to directly provide health care. The Secretary maintains, however, that Crews provided health care through others. The Court finds the Secretary's construction to be reasonable. Section 1128(b)(4) applies equally to "entities." Entities can only provide health care through other individuals. Both federal regulations, *see* 42 C.F.R. § 483.75(d)(2)(i), and Virginia statutes, *see* Va.Admin.Code § 95–20–270, require nursing homes to be operated by a licensed administrator. The same Vir-

ginia Administrative Code section allows for the revocation of a nursing home administrator's license if the administrator "conduct[s] the practice of nursing home administration in such a manner as to constitute a danger to the health ... of the residents...." *Id.* This authority ensures government oversight of a nursing home administrator's primary duties, which include the provision of health care to residents, even if through other professionals. Accordingly, an examination of the administrative record indicates that the Secretary's application of Section 1128(b)(4) to nursing home administrators' licenses is not arbitrary, capricious or otherwise contrary to law. This conclusion also accords with previous administrative decisions. *See Maurice Labbe,* DAB CR488 (1997) (implicitly finding nursing home administrator subject to exclusion under Section 1128(b)(4)).

■ Crews next argues that the Secretary's exclusion under Section 1128(b)(4) is contrary to law because he did not actually "surrender[ ] such a license while a formal disciplinary proceeding was pending." He maintains instead that he merely allowed his license to expire while informal proceedings were pending. However, the plain terms of the Consent Order in which Crews acknowledged "SURRENDER[ing]" his license "in lieu of further proceedings" belie this assertion. (All capital type in original). To allow Crews to circumvent the unambiguous language of the Consent Order merely because his license fortuitously expired just before the parties executed the Consent Order would not only threaten the certainty of Consent Orders previously executed, but also vitiate the Secretary's ability to protect the well-being of program beneficiaries. Accordingly, the Court finds the Secretary's determination that Crews surrendered his license and is therefore subject to the exclusion sanction to be a reasonable construction of Section 1128(b)(4).[2]

**2.** Even if the Court were to adopt Crews' labored construction of the Consent Order,

exclusion under Section 1128(b)(4) would be appropriate because Crews, by allowing his

■ Finally, Crews maintains that exclusion under Section 1128(b)(4) is contrary to law because no "formal disciplinary proceeding was pending" when he surrendered his license. Again, however, the plain terms of the Consent Order and correspondence between the parties belie Crews' hyper-technical interpretation of the statute. On January 30, 1996, the Board wrote Crews a letter warning him of a pending investigation and the possibility of "disciplinary sanction[s] in the form of a Consent Order." On February 28, 1996, the Board convened an "Informal Conference Committee" to investigate these alleged shortcomings. Despite its label as an "informal" committee, it undeniably concerned "the individual's or the entity's professional competence, professional performance, or financial integrity," as Section 1128(b)(4) requires. The same February 28, 1996 letter made clear to Crews that anything less than an exoneration by the Informal Conference Committee would automatically result in the referral of the matter "for a formal hearing in accordance with § 9–6.14:12." *See* Va. Code Ann. § 9–6.14:12 (prescribing procedures for formal proceedings). In fact, the Board later adopted the Informal Conference Committee's findings in full on July 10, 1996. In addition, the Consent Order explicitly accepted Crews' "SURRENDER" of his license "in lieu of further proceedings affecting the license of Mr. Crews." (All capital type in original). Accordingly, the Court finds that the Secretary's conclusion that formal disciplinary proceedings were pending at the time Crews surrendered his license was not arbitrary, capricious or otherwise contrary to the law.

Finally, Crews argues that the ALJ's and DAB's affirmance of his exclusion denies his constitutional right to due process. Specifically, Crews objects to the absence of oral argument on his appeals, to the ALJ's acceptance of the Secretary's reply

brief, and to the ALJ's perceived bias against excluded parties. Crews next notes that his exclusion is effective until he "obtains a valid license to practice medicine or provide health care in the State of Virginia." Because he does not intend to obtain another license, he maintains that the exclusion is effectively permanent and therefore is arbitrary and capricious. Finally, Crews argues that the publication of his exclusion on the Internet violates his liberty interest.

■ The Court rejects each of Crews' constitutional objections. As a threshold matter, none was raised before the DAB. Accordingly, it is improper for the Court to consider the arguments now. *Pleasant Valley Hospital,* 32 F.3d at 70; *GTE South Inc. v. Morrison, et al.,* 6 F.Supp.2d 517, 529 (E.D.Va.1998). However, even if the matter were properly before the Court, it appears unlikely that any of Crews' constitutional objections would merit redress. Contrary to his assertions. Crews was not denied a hearing prior to the deprivation of a property right. The Informal Conference Committee afforded Crews a hearing which he was entitled to personally attend with counsel, and at which he was invited to provide supporting documentation and to "review ... [and] discuss" the Board's allegations. In addition to the hearing with the Informal Conference Committee, Crews waived the opportunity to participate in formal, adversarial proceedings before the entire Board when he executed the Consent Order. Crews was denied oral argument before the ALJ and DAB. Such denials, however, are well within the discretion the administrative adjudicative structure affords. *See* 42 C.F.R. § 1005.3(a)(7) (parties to a hearing have the right to "present oral arguments at the hearing as permitted by the ALJ").

■ Similarly, the ALJ's consideration of the Secretary's reply brief and his al-

---

license to lapse under such circumstances had "otherwise lost" his license and is therefore subject to exclusion under subsection (a) of Section 1128(b)(4).

leged bias simply do not rise to the level of a constitutional violation. Crews' next contention is that his exclusion from the Medicare programs until relicensure is arbitrary. The Court finds the contrary to be true. Exclusion pending relicensure carefully tailors the sanction imposed while allowing the excluded party significant control over the matter. If this period of time is lengthy, it is lengthy not because it is arbitrary, but rather because of Crews' unwillingness to satisfy the conditions necessary for relicensure.

■ Finally, public dissemination of Crews' exclusion via the Internet does not violate his liberty interest. *Varandani v. Bowen,* 824 F.2d 307 (4th Cir.1987) (dismissing physician's due process claim challenging publication of suspension from Medicare program because he received notice of the impending suspension, an opportunity to respond in writing, and an opportunity to respond in person at an informal hearing). Even absent the significant procedural safeguards afforded Crews, the public's significant interest in preventing the substandard treatment of patients eligible for the Medicare programs diminishes the viability of any due process claim that might otherwise be present. *Id.; see also Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Accordingly, the Court finds that Crews presents no viable due process claim.

### CONCLUSION

For the reasons stated above, the Court GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for summary judgment. Judgment shall be entered in defendant's favor on all counts of plaintiff's complaint.

An appropriate Order shall issue.