767 F.2d 1304
 10 Soc.Sec.Rep.Ser. 242, Medicare&Medicaid Gu 34,837
PHOENIX BAPTIST HOSPITAL & MEDICAL CENTER, INC., a nonprofit
corporation dba Phoenix Baptist Hospital and
Medical Center, Plaintiff-Appellant,
v.
Margaret M. HECKLER, Secretary of Health and Human Services,
Defendant- Appellee.
 No. 84-2732.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 16, 1985.
Decided Aug. 5, 1985.
 
 Patric Hooper, Weissburg & Aronson, Inc., Los Angeles, Cal., for plaintiff-appellant.
 Michael R. Power, San Francisco, Cal., for defendant-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before ANDERSON and CANBY, Circuit Judges and IDEMAN*, District Judge.
 CANBY, Circuit Judge:
 
 
 1
 Phoenix Baptist Hospital and Medical Center (Hospital) appeals from a summary judgment affirming the determination by the Secretary of Health and Human Services (Secretary) of the Hospital's reimbursable Medicare costs. The Hospital challenges the Secretary's treatment of its income from a land investment as a reduction of allowable interest expense under 42 C.F.R. Sec. 405.419(b)(2)(iii). On appeal, the Hospital contends that the Secretary applied the regulations arbitrarily to deny the Hospital the benefit of the interest shelter for investment of funded depreciation. We affirm.
 
 BACKGROUND
 
 2
 Under the Medicare program, established in Title 18 of the Social Security Act, codified at 42 U.S.C. Sec. 1395-1935xx, the federal government reimburses Medicare providers for the reasonable costs incurred in providing covered services to Medicare beneficiaries. 42 U.S.C. Sec. 1395f(b). The Secretary is authorized to promulgate regulations governing cost reimbursement. 42 U.S.C. Sec. 1395x(v). Pursuant to that authority, the Secretary has promulgated regulations covering the reimbursement of necessary and proper interest expenses. 42 C.F.R. Sec. 405.419. To discourage unnecessary borrowing, the regulations require that the allowable interest expense be reduced by the provider's investment income. Income from the investment of funded depreciation, however, is not treated as an interest offset. 42 C.F.R. Sec. 405.419(b)(2)(iii). Funded depreciation is a special account created by Medicare providers to conserve funds for the replacement of depreciable assets. 42 C.F.R. Sec. 405.415(e). If the provider inappropriately invests the funded depreciation, then the fiscal intermediary, appointed by the Secretary to audit costs, can treat the fund income as ordinary investment income and offset the income against allowable interest expense. Provider Reimbursement Manual, Part 1 (HIM 15) Sec. 226.4, Medicare and Medicaid Guide (CCH) p 5152 at 1729-9. Cf. 42 C.F.R. Sec. 405.419(c)(3) (Intermediary can adjust for funded depreciation income sheltered in the past, if the fund was used for an improper purpose). The Intermediary's treatment of the Hospital's funded depreciation income is at issue in this case.
 
 
 3
 In 1978, the Hospital paid $80,000 for an option to acquire unimproved land for $455,000. In April 1979, the Hospital's Board decided to exercise the option and attempted to withdraw $375,000 from the funded depreciation account to pay the balance due on the land. The Arizona Bank, the account's trustee, however, refused to release the funds for this purpose because the municipal bond agreement that created the account did not permit the proposed use. Because the funded depreciation monies were unavailable, the Board borrowed $375,000 on the hospital's line of credit from the Arizona Bank. In September 1979, the hospital borrowed $375,000 from the funded depreciation account to repay the bank loan.[1] The Hospital sold the land for $1,020,703 on an installment basis in March of 1980, realizing a substantial gain.
 
 
 4
 In auditing the Hospital's 1979 cost report, Blue Cross, the Intermediary, determined that land investments lack the liquidity required for investments of funded depreciation. Pursuant to 42 C.F.R. Sec. 405.419(c)(3), the Intermediary reduced the allowable interest expense for 1979 to adjust for offsets not made in prior years for earnings on the $375,000. On appeal, the Provider Reimbursement Review Board affirmed the Intermediary's decision.[2] The Board found, inter alia, that the Hospital did not purchase the land with an expectation that the land "would represent a liquid investment."[3]
 
 
 5
 The Secretary declined to review the Board's decision and it became a final decision appealable to the district court pursuant to 42 U.S.C. Sec. 1395oo (f). On cross-motions for summary judgment, the district court affirmed the Board's decision. The court concluded that the Secretary had not acted arbitrarily or capriciously in determining that an investment in land was an inappropriate investment. The court's conclusion rested principally on the requirement of the Provider Reimbursement Manual, Part 1 (HIM 15) Sec. 226, Medicare and Medicaid Guide (CCH) p 5124 at 1729-4, that depreciation funds be placed in "readily marketable investments."
 
 DISCUSSION
 I.
 
 6
 We review de novo the summary judgment entered in favor of the Secretary. State of Alaska v. United States, 754 F.2d 851, 853 (9th Cir.1985). The Administrative Procedure Act, 5 U.S.C. Secs. 701-06 governs judicial review of Medicare reimbursement decisions. We will set aside the Secretary's decision if we find that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. Sec. 706(2)(A). We give considerable deference to the Secretary's interpretation of the Medicare scheme. Regents of the University of California v. Heckler, 756 F.2d 1387, 1393 (9th Cir.1985).
 
 II.
 
 7
 The Secretary interprets 42 C.F.R. Sec. 405.415(e)[4] to require that providers make conservative and liquid investments of funded depreciation as a condition to favorable income treatment. She concludes that land investments lack the required liquidity and are too speculative to conserve funds for the replacement of depreciable assets. The Hospital, however, contends that the record contains undisputed evidence that its land investment was as marketable as other investments the Secretary considers appropriate.
 
 
 8
 The district court affirmed the Secretary's interpretation on the basis of Provider Reimbursement Review Manual (HIM 15) Sec. 226, as amended. Since this case arose, that Manual was amended to provide that funded depreciation "must be placed in readily marketable investments of the type that assures the availability and conservation of funds." If the investment does not meet this condition, it does not qualify for the investment shelter under 42 C.F.R. 409.419(b)(2)(iii). The Hospital correctly argues that the Manual, as amended, is not determinative of this appeal. The Manual is a guide for intermediaries in applying the Medicare statute and reimbursement regulations and does not have the binding effect of law or regulation. International Philanthropic Hospital Foundation v. Heckler, 724 F.2d 1368, 1370 (9th Cir.1984). We, however, review the Board's decision de novo and affirm on a different ground.
 
 
 9
 The Secretary's position that the account should be invested conservatively in liquid assets is reasonable and consistent with the Medicare regulations she administers.[5] Thus, we must affirm her interpretation. 5 U.S.C. Sec. 706(2)(A). The Medicare regulations encourage providers to establish funded depreciation accounts to conserve funds for the replacement of depreciable assets used in patient care. 42 C.F.R. Sec. 405.415(e). As an incentive, the regulations shelter the account's investment income from the interest offset rule. 42 C.F.R. Sec. 409.419(b)(2)(iii). The Medicare program benefits from providers' funding depreciation because the funding reduces replacement costs for worn out equipment by eliminating interest expense on providers' loans. Requiring conservative and liquid investments is consistent with these regulations' goal of reducing Medicare costs. Although the Hospital's land investment proved profitable, it could have resulted in a loss of funded depreciation. Investment losses would undermine the integrity of the funded depreciation account and defeat the account's purpose. The investment's lack of liquidity could have caused unnecessary borrowing with attendant expense.
 
 
 10
 We conclude that the Secretary's interpretation is consistent with the purpose of the funded depreciation and investment income shelter provisions. It is not unreasonable for the Secretary to deny the Hospital the benefit of the investment income shelter for an inappropriate investment.
 
 
 11
 Affirmed.
 
 
 
 *
 The Honorable James M. Ideman, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 At all levels of review, the Hospital's investment was treated as an investment in land. In her brief, however, the Secretary argued that the fund was an investment to pay the intermediary loan used to purchase the land. We proceed under the theory, adopted by the Provider Reimbursement Board and conceded by the government at oral argument, that the funded depreciation was invested in land
 
 
 [2]
 The Provider Reimbursement Review Board had jurisdiction to review the Intermediary's audit adjustment because the amount in controversy exceeded $10,000. 42 U.S.C. Sec. 1395oo(a)
 
 
 [3]
 The Board also found that "[s]ince the investment of land is not related to patient care, the $375,000 cannot be considered an appropriate use of funded depreciation." The Hospital correctly argues that the Medicare regulations do not require that funded depreciation be invested in assets related to patient care. A contrary interpretation would be nonsensical. Regulation 409.419(c)(3) only requires that funded depreciation ultimately be used for the improvement, replacement or expansion of facilities or equipment. Use of the funded depreciation is not at issue
 
 
 [4]
 The regulation provides:
 Although funding of depreciation is not required, it is strongly recommended that providers use this mechanism as a means of conserving funds for replacement of depreciable assets, and coordinate their planning of capital expenditures with areawide planning activities of community and State agencies. As an incentive for funding, investment income on funded depreciation will not be treated as a reduction of allowable interest expense.
 
 
 [5]
 Administrative agencies are free to announce new principles in an adjudication so long as the decision does not impose undue hardship or circumvent the APA rulemaking provisions. Cities v. FERC, 723 F.2d 656, 659 (9th Cir.1984). Under this principle, the Secretary can impose a "liquidity" or "marketability" requirement on funded depreciation investments during this adjudication