**PLEASANT VALLEY HOSPITAL,**
**Plaintiff,**

v.

**Donna E. SHALALA, Secretary of the Department of Health and Human Services, et al., Defendants.**

**No. 6:92–1145.**

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Nov. 22, 1993.

---

George G. Guthrie, King, Betts & Allen, Charleston, WV, Melinda J. Roberts, Nash & Company, Pittsburgh, PA, for plaintiff.

Carol A. Casto, Asst. U.S. Atty., Charleston, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the parties' cross motions for summary judgment. This case is before the Court on appeal from a final decision of the Health Care Financing Administration ("HCFA") which denied Medicare reimbursement for a portion of the interest expense claimed by Plaintiff Pleasant Valley Hospital for the fiscal years ending September 30, 1985, 1986 and 1987.[1] For reasons which follow, the Court **DENIES** Plaintiff's motion for summary judgment, and **GRANTS** Defendants' motion.

Under *Rule* 56(c), Fed.R.Civ.P., summary judgment is proper only:

"[I]f the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

A principal purpose of summary judgment is to isolate and dispose of meritless litigation. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552. To discharge this burden the nonmoving party cannot rely on its pleadings, but instead must have evidence showing there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

### I.

Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 to 1395ccc ("Medicare Act"), provides federally funded medical benefits for the aged and disabled. Part A of the Medicare Act, the only part at issue in this case, provides health insurance funded from social security taxes. 42 U.S.C. § 1395c. Under the Medicare program, the federal government directly reimburses hospitals and other health care entities that agree to become Medicare "providers" for services they render to Medicare beneficiaries. 42 U.S.C. §§ 1395c to 1395i–4.

Qualified providers are entitled to reimbursement of the "reasonable cost" of furnishing hospital services to Medicare beneficiaries. 42 U.S.C. § 1395cc. The Act defines "reasonable cost" as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services...." 42 U.S.C. § 1395x(v)(1)(A).

The Secretary of the Department of Health and Human Services has promulgated regulations "establishing the method or methods to be used, and the items to be included, in determining such costs," *Id.*, and has published program instructions in manu-

---

1. Jurisdiction in this Court exists pursuant to the provisions of 42 U.S.C. § 1395oo (f)(1), which states in relevant portion:

Providers [of Medicare services] shall have the right to obtain judicial review of any final decision of the [Provider Reimbursement Review] Board, or of any reversal, affirmance, or modification by the Secretary [of the Department of Health and Human Services], by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received.

The provision vests jurisdiction of the civil action in "the district court of the United States for the judicial district in which the provider is located" and in the District Court for the District of Columbia.

The Secretary of the Department of Health and Human Services has delegated her authority to review Provider Reimbursement Review Board ("PRRB") decisions to the Administrator of the Health Care Financing Administration ("HCFA"). 42 Fed.Reg. 13262 (1977); 42 Fed. Reg. 57351 (1977).

In the complaint, Plaintiff avers it received the HCFA Administrator's decision at issue here on October 26, 1992. Plaintiff filed this action on December 18, 1992.

als available to the various participants in the Medicare program. The Provider Reimbursement Manual ("PRM") governs the reimbursement principles at issue in this case.

Medicare ordinarily makes payments to providers through private insurance companies which act as fiscal intermediaries. 42 U.S.C. § 1395h. At the end of each fiscal year, the provider files an annual cost report with its intermediary. 42 C.F.R. § 405.-1801(b)(1); 42 C.F.R. § 413.24(f). After auditing the report, the intermediary issues a "notice of program reimbursement" informing the provider of the amount of reimbursement to which it is entitled for the fiscal year. 42 C.F.R. § 405.1803.

If a provider is dissatisfied with the intermediary's determination, the Medicare Act allows the provider 180 days to request a hearing before the PRRB, which hears the matter and issues an opinion. 42 U.S.C. § 1395oo (a), (d). A decision of the PRRB is final unless the Secretary of the Department of Health and Human Services or her delegate reverses, affirms, or modifies the decision. 42 U.S.C. § 1395oo (f)(1). The Secretary or her delegate may reverse, affirm, or modify a PRRB decision *sua sponte* within 60 days after a provider is notified of the decision. *Id.* A provider may seek judicial review of a final decision of the PRRB or an action on a PRRB decision by the Secretary. *Id.*

## II.

This case concerns reimbursement for interest expenses related to capital indebtedness. Medicare regulations provide for the reimbursement of "necessary and proper" interest expenses incurred by providers on borrowed funds. 42 C.F.R. § 413.153(a)(1). To discourage providers from seeking Medicare reimbursement for interest on funds borrowed for capital acquisitions, while at the same time collecting income on investments they hold, Medicare regulations require that in order to be considered "necessary," interest expense must be reduced by investment income. 42 C.F.R. § 413.153(b)(2). There

are certain exceptions to this general rule; one is that investment income from a "funded depreciation account" ("FDA")[2] is not used to reduce allowable interest expense. 42 C.F.R. §§ 413.134(e)(1) and 413.153(b)(2)(iii).

The FDA income exception acts as an incentive for providers to fund depreciation. 42 C.F.R. § 413.134(e)(1). To qualify for the FDA exception, a provider must comply with a number of specific requirements, as set forth in the PRM. The PRM provisions applicable to funded depreciation (§§ 226–226.5) were originally issued in November, 1968. In January 1983, these sections of the PRM were revised. As revised, PRM § 226.2 specifically requires that to qualify for the FDA income exception, investment income earned by the FDA must itself be deposited in the FDA:

> Where the provider funds depreciation, it is expected that money in the fund will be invested to earn revenues. Investment income earned by the funded depreciation account attributable to cumulative allowable depreciation expense funded in periods either before or after the provider's participation in the Medicare program is not a reduction of allowable interest expense, *provided such investment income is deposited in and becomes part of the funded depreciation account.*

PRM § 226.2 (emphasis added).

Section 226.3 of the PRM further emphasizes the requirement that investment income be deposited in the FDA:

> Investment income from such funded depreciation deposits retains its identity and becomes part of the funded depreciation fund if deposited in the funded depreciation account at the time of receipt by the provider.

PRM § 226.3.

FDA funds must "be placed in readily marketable investments of the type that assures the availability and conservation of the funds." 42 C.F.R. § 413.134(e). Moreover, under PRM § 226.3, deposits to the FDA must remain for 6 months or more to be

---

**2.** A FDA is a special account created by a Medicare provider to conserve funds for replacement of depreciable assets. 42 C.F.R. § 413.134(e).

considered valid funding transactions. *See also,* 42 C.F.R. § 413.134(e).

### III.

The parties do not dispute the material facts of this case. Plaintiff Pleasant Valley Hospital is a non-profit, general hospital certified as a "provider" under the Medicare Act. Throughout the period at issue Plaintiff maintained a FDA, which it invested in certificates of deposit ("CDs") at local banks and savings and loan institutions.

During fiscal years ending September 30, 1985, through September 30, 1987, Plaintiff undertook a major project to renovate its physical facilities. Plaintiff paid the cost of its capital expenditures from its general operating fund. As the CDs in Plaintiff's FDA matured, Plaintiff deposited the interest income into its general operating fund. Plaintiff used these FDA funds to reimburse its general operating fund for patient-care related capital expenditures made during the period, or committed to be made within the next 30 days.

In each year, Plaintiff's capital expenditures substantially exceeded the FDA principal and interest deposited in the general operating fund. During the entire period, Plaintiff spent $600,201.76 more from its general operating fund for the purchase of patient-care related capital expenditures than it transferred to the general operating fund from the FDA.

When Plaintiff's fiscal intermediary audited Plaintiff's cost reports for 1985, 1986, and 1987, it determined Plaintiff was entitled to substantial Medicare reimbursement for each of those years.[3] However, the intermediary also determined Plaintiff was required to offset the interest it earned on the FDA CDs. Although interest earned on FDAs is ordinarily not applied to reduce allowable interest expense, the intermediary found Plaintiff did not deposit the interest from the CDs into its FDA, as required by PRM § 226.2, but instead deposited this interest income into its general operating fund.

Plaintiff appealed the intermediary's decision to the PRRB, which held a "record hearing," and reversed the intermediary's determination, finding Plaintiff's practices satisfied Medicare's purpose for FDAs. After reviewing the entire record, the Deputy Administrator of HCFA reversed the PRRB decision, and agreed with the intermediary that Plaintiff failed to comply with the explicit requirement that before FDA income can be sheltered from offset against allowable interest expense, it must itself become part of the FDA. Plaintiff now seeks review of the HCFA Administrator's decision in this Court.

### IV.

█ The scope of this Court's review of the Secretary's final decision is narrow. The Court is empowered to determine only if the Secretary's findings and conclusions are supported by substantial evidence and are not arbitrary, capricious or otherwise contrary to law. *Richlands Medical Ass'n v. Harris,* 651 F.2d 931, 934 (4th Cir.1981); *Myers v. Califano,* 611 F.2d 980, 982–83 (4th Cir.1980).

█ Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla, but may be less than a preponderance. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966). Courts have defined substantial evidence as "enough to justify, if the trial were to jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951); *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir.1984).

█ To evaluate whether the Secretary's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the Court must look to see whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.

---

**3.** The intermediary found Plaintiff was entitled to reimbursement of more than $3.7 million in 1985, almost $4 million in 1986, and almost $4 million in 1987.

*Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). In cases arising under a complex statutory scheme such as Medicare, the Court accords great deference to the agency's expertise in interpreting its own regulations. *Lexington County Hosp. v. Schweiker,* 740 F.2d 287, 289 (4th Cir.1984).

### V.

■ Plaintiff argues here for the first time the HCFA administrator improperly relied on PRM § 226.2 to require the offset at issue here. That section was amended in 1983 to make explicit the requirement that investment income must become part of the FDA to be eligible for an exemption from offset. *See supra* pp. 4–5. Plaintiff contends the Secretary failed to promulgate the 1983 revisions to the PRM in accordance with the notice and comment requirements of the Administrative Procedure Act.

■ Because Plaintiff failed to raise this argument during the administrative process, the Court may not reach it now. Judicial review of actions arising under the Social Security Act is available only under the jurisdictional provisions of that Act and only to the extent that the Act provides for such review. *Califano v. Sanders,* 430 U.S. 99, 104–08, 97 S.Ct. 980, 983–86, 51 L.Ed.2d 192 (1977). The Medicare Act provides for judicial review of a claim only after the Secretary or her delegate, in this case the HCFA Administrator, renders a final decision on it. *Heckler v. Ringer,* 466 U.S. 602, 605, 104 S.Ct. 2013, 2016, 80 L.Ed.2d 622 (1984). Although the HCFA Administrator has issued a final decision on the arguments Plaintiff raised during the administrative process, he has had no opportunity to consider contentions never brought before him.

The Supreme Court has long held it is inappropriate for courts to consider arguments not raised before the administrative agency on appeal of the agency decision, because doing so usurps the agency's function. *Unemployment Compensation Comm. of Territory of Alaska v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946); *see also, Perales v. Heckler,* 611 F.Supp. 333, 344, *aff'd,* 762 F.2d 226 (2d Cir.1985). As the Court stated in *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952):

> Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.

The Secretary has amassed considerable expertise in the health care area. *Alacare Home Health Services Inc. v. Sullivan,* 891 F.2d 850, 854 (11th Cir.1990). A litigant who brings a claim in the district court not initially raised during the administrative process deprives the court of the Secretary's expertise on the issues and provisions in contention. *Cisternas–Estay v. Immigration and Nat. Serv.,* 531 F.2d 155, 160 (3d Cir.1976), *cert. denied,* 429 U.S. 853, 50 L.Ed.2d 127 (1976). Moreover, because Plaintiff failed to raise this argument during the administrative process, the agency conducted no factfinding on issues critical to determining whether PRM § 226.2 was properly promulgated. As Defendants note, this Court is charged with reviewing the agency's decision, not with replacing the agency as finder of fact.

Because neither the Secretary nor the PRRB has had occasion to issue a final decision on this aspect of Plaintiff's claim, the Court lacks subject matter jurisdiction to hear it. 42 U.S.C. § 1395oo (f)(1). The Court therefore may not entertain Plaintiff's claim that PRM § 226.2 was improperly promulgated.

### VI.

■ The HCFA Administrator found the interest Plaintiff earned on its FDA did not qualify for shelter against offset:

> After a review of the record, the applicable law and Manual sections, the Administrator finds that the Provider failed to comply with the requirements of Section 226.2 of the [PRM]. The record indicates that, as the CDs which comprised the monies of

the Provider's funded depreciation matured, the Provider deposited the earned investment income into its general operating account. Contrary to the Provider's arguments, to be considered "deposited in and part of the funded depreciation fund," the investment income must be deposited in the funded depreciation account at the time of receipt by the provider.

Plaintiff argues the Administrator's conclusion was arbitrary and capricious, because it ignores "the nature of monies deposited with a financial institution under a CD." Interest earned on a CD, Plaintiff contends, is "on deposit" to the account of the depositor while the CD is maturing. Plaintiff labels the Administrator's construction of the regulations "hypertechnical," and contends it exalts form over substance.

Plaintiff has failed to demonstrate the HCFA Administrator's decision is not supported by substantial evidence of record. Section 226.3 of the PRM plainly states investment income earned on a FDA becomes part of the FDA if the provider deposits the income in the FDA "at the time of receipt by the provider." The PRRB found Plaintiff had a "practice of depositing the investment income from its funded depreciation account directly into its general operating account." The HCFA Administrator found that "[a]s investment income was earned on the mature CD's the Provider deposited the income earned on the funded depreciation accounts into its general operating account."

In its initial filings before the PRRB, Plaintiff itself conceded it "invested the monies of the funded depreciation account in certificates of deposit, and upon maturity, deposited the investment income to the Provider's general operating fund...." Later Plaintiff adjusted its argument, asserting instead it deposited "an amount equal" to the interest earned on the FDA into the general operating fund.

Although Plaintiff now contends the interest it earned on the CDs was "on deposit" before it was paid to Plaintiff, this argument ignores the language of § 226.3 which requires the interest earned be deposited in the FDA when the provider actually receives it. It is what Plaintiff did with the interest money it received that is important here. Substantial evidence demonstrates when Plaintiff received the FDA income, it deposited the money not back into the FDA, but instead into its general operating fund.

■ The HCFA Administrator's construction of § 226.3 is not "hypertechnical," but is consistent with the goal underlying the offset exception for FDA income. Funding depreciation is strongly encouraged under the Medicare program because the funding reduces replacement costs for worn out equipment by eliminating interest expense on providers' loans. *Phoenix Baptist Hosp. and Medical Center, Inc. v. Heckler*, 767 F.2d 1304, 1307 (9th Cir.1985). "The concept of funded depreciation, however, requires that providers firmly commit to use clearly identified funds only for the acquisition of depreciable assets or other capital purposes related to patient care." *Monongalia Valley Hosp., Inc. v. Sullivan*, 945 F.2d 576, 592 (3d Cir. 1991). Otherwise, the offset exception serves no purpose, and FDA funds might be readily used for purposes other than funding of depreciation. *See St. Mary's Hosp. v. Blue Cross and Blue Shield Ass'n*, 788 F.2d 888, 890–91 (2d Cir.1986). The HCFA Administrator's construction of § 226.3 encourages the clear identification and separation of FDA funds necessary to serve the interests of the Medicare program in allowing an offset exception for FDA income.

Plaintiff argues as well the HCFA Administrator should have found the money it used from the FDA was principal rather than interest because the regulations and the PRM require a first-in, first-out method of accounting for FDA withdrawals used to purchase capital assets. PRM § 226.4(A). This contention presupposes that Plaintiff at some point deposited the interest into the FDA. Because the HCFA Administrator found the interest never became part of the FDA, a conclusion supported by substantial evidence, it was unnecessary for him to determine which funds would have been withdrawn from the FDA first, had Plaintiff actually deposited the interest in its FDA.

## VII.

For these reasons, the Court determines the Secretary's findings and conclusions are supported by substantial evidence and are not arbitrary, capricious or otherwise contrary to law. Accordingly, the Court **AFFIRMS** the Secretary's decision.