**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JEFFREY K. PLASKETT,
*Plaintiff-Appellant,*

v.

CHRISTINE WORMUTH, Secretary,
U.S. Department of the Army,
*Defendant-Appellee.*

No. 19-17294

D.C. No.
5:18-cv-06466-
EJD

OPINION

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted January 15, 2021
San Francisco, California

Filed November 19, 2021

Before:  Mary M. Schroeder, Ryan D. Nelson, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Collins;
Concurrence by Judge Schroeder

### SUMMARY[*]

**Mandamus Act / Jurisdiction**

The panel affirmed the district court's judgment dismissing for lack of jurisdiction plaintiff's action against the Secretary of the U.S. Department of the Army under the Mandamus Act and the Administrative Procedure Act ("APA") seeking payment of additional claimed backpay and a sanctions award.

Regardless of whether plaintiff's claim was viewed as one under the Mandamus Act, 28 U.S.C. § 1361, or under the APA, 5 U.S.C. § 706(1), plaintiff was required to plead, *inter alia*, that the Army had a clear, certain, and mandatory duty to pay him the additional backpay he sought, and the sanctions award that the EEOC had imposed. The district court dismissed plaintiffs' claims based solely on lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and expressly declined to reach the Army's challenges under Fed. R. Civ. P. 12(b)(6). As to the sanctions award, the panel agreed with the district court that the issue of the Army's sovereign immunity raised a jurisdictional issue and was properly resolved under Rule 12(b)(1). As to the issue of back pay, the panel held that the adequacy of plaintiff's APA claim should have been analyzed under Rule 12(b)(6) rather than Rule 12(b)(1). The panel began by evaluating all of plaintiff's claims under the standards applicable to a motion to dismiss for failure to state a claim. Because the panel concluded that all of plaintiff's claims failed under those

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

standards, the panel did not consider whether the applicable Rule 12(b)(1) standards might have made a difference.

The panel held that plaintiff's claim to additional backpay rested on an EEOC October 2017 decision, but the order on its face expressed uncertainty as to what amount, if any, of additional backpay might be due. Plaintiff's complaint failed to plead sufficient facts to show that the process contemplated by the October 2017 decision had been completed and that a certain amount of additional backpay was now clearly owed to him.

Plaintiff nonetheless contended that the Army should be barred from contesting that it owed him $21,020.01 in additional backpay. First, plaintiff contended that the Army effectively conceded that it owed him that amount. On this record, the panel held that plaintiff had provided no plausible basis for concluding that the Army had waived its objections to the adequacy of plaintiff's documentation or to the correctness of his claim for additional backpay. Second, plaintiff asserted that the doctrine of laches barred the Army from contesting the amount of backpay due. As the district court correctly recognized, a plaintiff cannot invoke the doctrine of laches based on the premise that the plaintiff was prejudiced by his opponent's supposed failure to inform it about the plaintiff's own burden of proof under the law. The panel held that plaintiff failed to state a claim under 28 U.S.C. § 1361 or APA § 706(1) for the payment of additional backpay, and the district court properly dismissed plaintiff's first cause of action.

Concerning plaintiff's claim for payment of the sanctions award, the panel considered whether the district court correctly concluded that the Army's sovereign immunity had not been waived. The panel agreed with the district court's conclusion, but its reasoning differed.

Whether the Army's sovereign immunity has been waived here turns on whether an applicable waiver was unequivocally expressed in statutory text. In contending that the Army's immunity from monetary litigation sanctions was waived, the only statute plaintiff relied on was § 15 of the Age Discrimination in Employment Act ("ADEA"). The panel rejected plaintiff's contention that a sufficient waiver of the Government's immunity against monetary litigation sanctions could be found in § 15's express statement that the EEOC could impose appropriate remedies that will effectuate policies of the section. The panel rejected plaintiff's additional arguments, and concluded that sovereign immunity precluded enforcement of the award levied by the EEOC in this case. The district court properly dismissed plaintiff's second cause of action.

Judge Schroeder concurred, and agreed with the majority's conclusion that plaintiff was not entitled to any of the relief he sought. Plaintiff could not succeed on his claim for additional backpay because he failed to show that the amount he sought represented moonlight earnings improperly deducted as replacement income. This was true based on either looking at the allegations of the complaint, as the majority did, or looking through the record, as the district court did. With respect to sanctions, there was no legal authority that authorized the EEOC to impose monetary sanctions against the government for discovery violations. The EEOC lacked express authority under either its regulations or the ADEA statute, and the court need not decide whether that express authority must be by a statutory amendment or whether an amendment to the EEOC regulations would be sufficient.

**COUNSEL**

Wendy E. Musell (argued), Law Offices of Wendy Musell, Oakland, California, for Plaintiff-Appellant.

Lewis S. Yelin (argued) and Marleigh D. Dover, Appellate Staff; David L. Anderson, United States Attorney; Ethan P. Davis, Acting Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellee.

**OPINION**

COLLINS, Circuit Judge:

In 2012, the Equal Employment Opportunity Commission ("EEOC") concluded, after an administrative proceeding under the Age Discrimination in Employment Act ("ADEA"), that the U.S. Army had unlawfully discriminated against Plaintiff Jeffrey Plaskett on the basis of age when it failed to rehire him for a particular civilian position in 2010. The EEOC awarded Plaskett reinstatement and backpay, and it also ordered the Army to pay him sanctions in light of the Army's failure to comply with its discovery obligations during the administrative proceedings. The Army, however, refused to pay the sanctions award on the ground that it was barred by sovereign immunity. And although the Army agreed to hire Plaskett and paid him backpay, Plaskett subsequently claimed that the Army owed him additional backpay. Dissatisfied with his efforts to resolve these disputes directly with the Army or through the EEOC, Plaskett ultimately filed this civil action seeking payment of both the additional claimed backpay and the sanctions award. Plaskett alleged that the Army's

nondiscretionary duty to pay these sums was enforceable under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). The district court dismissed the action for lack of jurisdiction, concluding that the requirements of mandamus jurisdiction were not met as to the backpay award and that the Army's sovereign immunity barred enforcement of the sanctions award. Although our reasoning differs in some respects from that of the district court, we agree that this action was properly dismissed. We therefore affirm the district court's judgment.

## I

### A

From July 4, 2006 until September 30, 2010, Jeffrey Plaskett was employed as an Engineering Equipment Operator by the U.S. Army at Fort Hunter Liggett in Jolon, California. Shortly after that term appointment expired, Plaskett applied for one of four open permanent positions for the same job. However, the 55-year-old Plaskett was not hired; instead, four younger men ranging in age from 29–45 were selected.

In November 2010, Plaskett filed an administrative complaint with the EEOC alleging that the Army had violated § 15 of the ADEA, which generally provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in military departments . . . , in executive agencies[,]" and certain other governmental entities "shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). After hearing testimony over several days, the EEOC administrative judge on October 18, 2012 issued a decision specifically finding that "Plaskett was not selected for an

Engineering Equipment Operator position because of his age" and that the Army had therefore violated the ADEA. The administrative judge ordered Plaskett to be hired in the same or a substantially equivalent position and also awarded him backpay. *See* 29 U.S.C. § 633a(b) (stating that, in EEOC proceedings to enforce the ADEA, the EEOC is authorized to provide "appropriate remedies, including reinstatement or hiring of employees with or without backpay").

In a separate order issued the next day, the administrative judge ordered the Army to pay Plaskett $7,012.50 as a sanction for its failure to produce discovery in a timely manner. The judge concluded that the Army's efforts to locate documents had not been sufficiently "diligent," and important documents were belatedly produced "at or after" the hearing, and then only after multiple requests by Plaskett and the filing of a motion to compel. The sanction amount was determined by multiplying the "reasonable time" that Plaskett's attorney had spent pursuing this discovery (16.5 hours) by a reasonable hourly rate for attorneys in the relevant legal community ($425). As authority for imposing this monetary sanction, the judge cited 29 C.F.R. § 1614.109(f)(3).[1] That section provides that, when a complainant or an agency fails to comply with an administrative judge's orders or with discovery requests, the judge may impose one or more merits-related sanctions (such as drawing adverse inferences or even terminating

---

[1] The administrative judge's order actually says "§ 1614.(f)(3)," but all parties agree that § 1614.109(f)(3) was the intended referent.

sanctions) or may "[t]ake such other actions as appropriate."
*Id.*[2]

Under the EEOC's regulations, an agency must act on an
administrative judge's decision by "issuing a final order
within 40 days," notifying the complainant "whether or not
the agency will fully implement the decision." 29 C.F.R.
§ 1614.110(a). If the agency's final order does not fully

---

[2] Subsection (f)(3) provides:

> (3) When the complainant, or the agency against
> which a complaint is filed, or its employees fail
> without good cause shown to respond fully and in
> timely fashion to an order of an administrative judge,
> or requests for the investigative file, for documents,
> records, comparative data, statistics, affidavits, or the
> attendance of witness(es), the administrative judge
> shall, in appropriate circumstances:
>
> (i) Draw an adverse inference that the requested
> information, or the testimony of the requested witness,
> would have reflected unfavorably on the party refusing
> to provide the requested information;
>
> (ii) Consider the matters to which the requested
> information or testimony pertains to be established in
> favor of the opposing party;
>
> (iii) Exclude other evidence offered by the party
> failing to produce the requested information or
> witness;
>
> (iv) Issue a decision fully or partially in favor of the
> opposing party; or
>
> (v) Take such other actions as appropriate.

29 C.F.R. § 1614.109(f)(3).

implement that decision, "then the agency shall simultaneously file an appeal" with the EEOC. *Id*. Accordingly, on December 3, 2012, the Army issued a "final action" notice stating that it would implement the EEOC's October 18, 2012 order granting relief for a violation of the ADEA. However, in the same notice, the Army stated that it would not implement the EEOC's October 19, 2012 sanctions order. The Army noted that the U.S. Department of Justice's Office of Legal Counsel ("OLC") "has expressly opined that there has been no express waiver of sovereign immunity that would authorize the payment of sanctions in administrative cases before the EEOC." *See Authority of the EEOC to Impose Monetary Sanctions Against Federal Agencies for Failure to Comply with Orders Issued by EEOC Administrative Judges*, 27 Op. O.L.C. 24 (2003). The Army stated that it was "bound to follow this [OLC] opinion" over the conflicting views of the EEOC, and it therefore declined to implement the EEOC's sanctions order. Consistent with the regulation, the Army simultaneously filed an appeal of that order with the EEOC's "Office of Federal Operations" ("OFO"), *see* 29 C.F.R. § 1614.403(a), which is authorized to issue decisions in such appeals "on behalf of the Commission," *id*. § 1614.405(a).

In its appeal of the sanctions order, the Army relied solely on sovereign immunity and did not otherwise contest that the sanction was warranted and proportionate to the Army's violation of its discovery obligations during the administrative proceedings. In August 2015, the OFO issued an order upholding the sanction and directing the Army to pay it. The Army timely sought reconsideration of the OFO's decision, but reconsideration was denied in May 2016. Plaskett petitioned for enforcement of the order in July 2016, and the OFO granted that petition in July 2018.

## B

Meanwhile, in May 2014, Plaskett informed the Army that he believed that his backpay had been underpaid. Specifically, Plaskett contended that the Army had improperly deducted the amount of his private employment income during the backpay period from the final backpay awarded. According to Plaskett, the private employment income at issue, arising from Plaskett's bulldozing work, was "moonlighting" income that should not have been deducted under the applicable regulations. *See* 5 C.F.R. § 550.805(e)(1) (stating that, although "outside earnings . . . undertaken to replace" the employment from which an employee has been wrongfully separated should be deducted in calculating backpay, "earnings from additional or 'moonlight' employment the employee may have engaged in while Federally employed (before separation) and while erroneously separated" should not be deducted).

After Plaskett did not receive a satisfactory response from the Army on this issue, Plaskett filed a formal appeal with the OFO in April 2015, asserting that the Army owed him $21,020.01 in additional backpay under the December 2012 final action. While the appeal was pending, the Army sent an email to Plaskett's counsel noting that, pursuant to DoD Financial Management Regulation ("FMR") 7000.14-R, Vol. 8, Chap. 6, § 060505(C) (2013), "[t]he only earnings from other employment that are not deducted from back pay are earnings from outside employment the employee already had *before* the period of wrongful suspension or separation" (emphasis added).[3] Accordingly, the Army requested that Plaskett provide documentation showing that he had

---

[3] The relevant language is now contained, substantially unchanged, in § 060405(C) of the current version of the regulation.

engaged in the asserted moonlighting employment before he left the Army's employment. Asserting that Plaskett did not supply such documentation, the Army subsequently declined to pay any additional backpay.

The OFO issued its decision in Plaskett's appeal in October 2017. The OFO noted that the Army conceded that Plaskett "should be reimbursed for the amount deducted from back pay that was moonlighting earnings," but the OFO stated that "neither party has submitted documentation [of] the sum thereof." Accordingly, the OFO ordered the Army to reimburse Plaskett's "back pay, with interest, that it incorrectly deducted as interim earnings but was moonlighting work." Plaskett was ordered to "cooperate in the [Army's] efforts to compute the amount of back pay and benefits due" and to "provide all relevant information requested" by the Army.

In January 2018, Plaskett sought enforcement of the October 2017 decision, and an EEOC Compliance Officer requested a compliance report from the Army. The Army wrote to Plaskett's counsel in February 2018, stating that, while it had not yet reimbursed any asserted moonlighting earnings, that was attributable to "Plaskett's failure to provide either time cards or other statements showing he was engaged in outside employment while still a federal employee in 2010." Counsel responded by asserting that Plaskett had already "provided all of the information he was required" to provide. At the instructions of the Compliance Officer, the Army's attorney in May 2018 sent Plaskett's counsel an email explaining that the only outside employment time cards the Army had received from Plaskett covered pay periods in 2012 and 2013 and were therefore inadequate to establish that Plaskett had engaged in such

employment before October 2010. Plaskett's counsel apparently did not respond to this email.

Subsequently, on May 30, 2018, the OFO docketed Plaskett's formal petition for enforcement of the December 2017 order. Plaskett asserted that the Army had failed to comply with the October 2017 order and that he was owed $21,020.01 in additional backpay. In its response, the Army stated that it did not construe the October 2017 order as requiring the payment of $21,020.01 and that, without additional documentation from Plaskett, it could not determine any amount of moonlighting earnings that were improperly offset against the backpay award.

## C

Before the EEOC acted on Plaskett's petition for enforcement of the December 2017 order, Plaskett filed this action in the district court on October 23, 2018. Plaskett's first cause of action sought an order directing the Army to pay him additional backpay in the amount of $21,020.01, plus interest, and his second cause of action sought an order requiring payment of the $7,012.50 sanctions award. In seeking to compel these actions by the Army, Plaskett's complaint relied on two sources of authority: (1) the district court's jurisdiction over "action[s] in the nature of mandamus" under the Mandamus Act, *see* 28 U.S.C. § 1361; and (2) the judicial review provisions of the APA, which allow a court to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1).

The Army moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim on which relief may be granted, *see* FED. R. CIV. P. 12(b)(1), (6), and the district court granted that motion in September 2019. The court concluded that mandamus jurisdiction did not lie as to

the backpay dispute, because Plaskett had not shown a clear right to the additional sum claimed.  For similar reasons, the court also held that it lacked jurisdiction under the APA.  As to the sanctions award, the district court concluded that it lacked jurisdiction in light of the Government's sovereign immunity.  Although the EEOC contended that the Government's immunity was waived under the EEOC regulation at 29 C.F.R. § 1614.109(f)(3), the court held that the regulation lacked the requisite clear and unequivocal waiver of sovereign immunity.  Accordingly, the district court dismissed the action.  Plaskett timely appealed to this court.

## II

Before turning to Plaskett's specific claims for additional backpay and for payment of the sanctions award, we first review the requirements of the particular sources of authority that he invoked, *viz.*, the Mandamus Act and the APA.

## A

Although the common-law writ of mandamus has been abolished in the district courts, *see* FED. R. CIV. P. 81(b),[4] the Mandamus Act grants district courts "original jurisdiction of any action in the nature of mandamus" against a federal officer or agency.  28 U.S.C. § 1361; *see generally* 33 CHARLES A. WRIGHT, CHARLES H. KOCH, & RICHARD MURPHY, FEDERAL PRACTICE AND PROCEDURE § 8305 (2d ed. 2018) (noting that § 1361 "uses the indirect phrasing, 'in

---

[4] By contrast, the "common-law writ of mandamus against a lower court" remains available to appellate courts under the All Writs Act, 28 U.S.C. § 1651(a).  *See Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380 (2004).

the nature of mandamus,'" in light of Rule 81(b)).  However, § 1361's grant of such jurisdiction "does not expand the generally recognized scope of mandamus." *Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1180 (9th Cir. 1983). Consistent with the limitations that traditionally governed the common-law writ of mandamus, an action under § 1361 is thus "intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).  As we have explained, "[a]n order pursuant to § 1361 is available only if (1) the claim is clear and certain; (2) the official's or agency's 'duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Agua Caliente Tribe of Cupeño Indians of Pala Rsrv. v. Sweeney*, 932 F.3d 1207, 1216 (9th Cir. 2019) (quoting *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997)). Accordingly, to establish his entitlement to mandamus-type relief, Plaskett had to plead that these three requirements were met.

## B

"The APA authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 61 (2004) (quoting 5 U.S.C. § 702).  "[A]gency action" is defined to include a "failure to act," *see* 5 U.S.C. § 551(13), and in a suit brought by an aggrieved person over such a failure to act, the APA expressly authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed," *id*. § 706(1).  Construing the APA in light of its antecedents, when judicial review was often sought through "writs of mandamus," the Supreme Court has held that "a

claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 63–64. Thus, "§ 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing *how* it shall act.'" *Id.* at 64 (citation omitted); *see also Center for Biological Diversity v. Veneman*, 394 F.3d 1108, 1112 (9th Cir. 2005).

We have recognized that, in this respect, the showing required to support a request for an order under § 706(1) compelling an agency to take a discrete action mirrors the showing that is required to obtain mandamus-type relief. *See Agua Caliente Tribe*, 932 F.3d at 1216 (considering the two forms or relief "together because the relief sought is essentially the same") (simplified). That is, because a "court can compel agency action under [§ 706(1)] only if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action," the "agency action must be pursuant to a legal obligation 'so clearly set forth that it could traditionally have been enforced through a writ of mandamus.'" *Vietnam Veterans of Am. v. CIA*, 811 F.3d 1068, 1075–76 (9th Cir. 2016) (citations omitted).[5]

---

[5] We have suggested that jurisdiction under the Mandamus Act may not be proper when, as here, Plaskett would have an adequate remedy under § 706(1) of the APA for any meritorious claim. *See Independence Min. Co. v. Babbitt*, 105 F.3d 502, 507 n.6 (9th Cir. 1997) ("[W]e question the applicability of the traditional mandamus remedy under the [Mandamus Act] where there is an adequate remedy under the APA."); *cf. Piledrivers' Local Union No. 2375 v. Smith*, 695 F.2d 390, 392 (9th Cir. 1982) ("Mandamus jurisdiction" under the Mandamus Act only "exists when . . . no other adequate remedy is available."). We need not address this issue, however, because we have subject matter jurisdiction

## C

It follows from these settled principles that, regardless of whether Plaskett's claim is viewed as one under § 1361 or under § 706(1), he was required to plead, *inter alia*, that the Army had a clear, certain, and mandatory duty to pay him (1) the additional backpay he sought and (2) the sanctions award that the EEOC had imposed. In reviewing whether the district court properly dismissed this action for failure to carry this burden, we confront an initial question concerning the proper procedural framework for reviewing the district court's decision.

The district court dismissed Plaskett's claims based solely on "lack of subject matter jurisdiction" under Rule 12(b)(1) and it expressly declined to "reach [the Army's] challenges under Rule 12(b)(6)." As to the sanctions award, we agree that the issue of the Army's sovereign immunity raises a jurisdictional issue that was properly resolved under Rule 12(b)(1). *See Mundy v. United States*, 983 F.2d 950, 952 (9th Cir. 1993). But as to the issue of backpay, the matter is more complicated. We have generally treated the requirements for obtaining mandamus-type relief under § 1361 as jurisdictional in nature, *see, e.g., Stang v. IRS*, 788 F.2d 564, 565–66 (9th Cir. 1986); *but cf. In re First Fed. Savs. & Loan Ass'n of Durham*, 860 F.2d 135, 140 (4th Cir. 1988), but the Army now correctly concedes that it was error to dismiss Plaskett's APA claim for backpay for lack of subject matter jurisdiction. Any deficiencies as to the APA claim go to the merits of that cause of action rather than to the subject matter jurisdiction of the court to consider it. *See*,

---

over the APA claim under 28 U.S.C. § 1331, and Plaskett's claims fail under either the APA or the Mandamus Act given that he lacks any clear right to relief.

*e.g.*, *Califano v. Sanders*, 430 U.S. 99, 106–07 (1977) (holding that the APA is not a jurisdictional provision and that jurisdiction in APA cases rests on the federal question statute, 28 U.S.C. § 1331).  The adequacy of Plaskett's APA claim for additional backpay thus should have been analyzed under Rule 12(b)(6) rather than Rule 12(b)(1).

We therefore begin by evaluating all of Plaskett's claims under the standards applicable to a motion to dismiss for failure to state a claim.  *See Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003) ("We may affirm a district court's judgment on any ground supported by the record.").  And because, for the reasons explained below, we conclude that all of his claims fail under those standards, we need not consider whether the application of Rule 12(b)(1) standards might have made a difference.  *Cf. Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000) (noting that "motions to dismiss under Rule 12(b)(1), unlike a motion under Rule 12(b)(6)," may involve presentation of evidence and findings of fact).

## D

Accordingly, in reviewing Plaskett's claims, we consider whether, "taking all well-pleaded factual allegations as true, it contains enough facts to 'state a claim to relief that is plausible on its face.'" *Hebbe v. Pliler*, 627 F.3d 338, 341–42 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  In applying these standards, we "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  The adequacy of Plaskett's claims under these standards raises a question of

law that we consider de novo. *Id.* at 760. Likewise, whether the Army was entitled to sovereign immunity as to the sanctions award presents a question of law that we review de novo. *Orff v. United States*, 358 F.3d 1137, 1142 (9th Cir. 2004), *aff'd*, 545 U.S. 596 (2005).

## III

We conclude that Plaskett has failed to state a claim, under either § 1361 or § 706(1), for $21,020.01 in additional backpay.

## A

Plaskett's claim to additional backpay ultimately rests on the EEOC's October 2017 decision, but that ruling does not establish a "clear and certain" claim resting on a "nondiscretionary, ministerial" duty to pay additional backpay that is "so plainly prescribed as to be free from doubt." *Agua Caliente Tribe*, 932 F.3d at 1216 (citations and internal quotation marks omitted). On the contrary, the order on its face expresses uncertainty as to what amount, if any, of additional backpay might be due.

The October 2017 order confirms that there is no dispute that, if the Army offset its backpay award by amounts that Plaskett earned as a result of moonlighting work, then Plaskett is entitled to receive additional backpay reflecting that improperly deducted amount. *See* 5 C.F.R. § 550.805(e)(1); DoD FMR 7000.14-R, Vol. 8, Chap. 6, § 060505(C) (2013); *see also supra* at 10–11. As the order explains, the Army "concedes [Plaskett] should be reimbursed for the amount deducted from back pay that was moonlighting earnings." While the order reflects the parties' apparent assumption that the amount of such reimbursable moonlighting earnings was not zero, the order does not make

any finding as to what, if any, amount is actually owed. On the contrary, the order states that "neither party has submitted documentation [of] the sum thereof." The order therefore directs the Army to "determine the appropriate amount of back pay, with interest," and it directs Plaskett to "cooperate in the [Army's] efforts to compute the amount of back pay and benefits due" and to "provide all relevant information requested" by the Army. The order also specifies that, in the event of a dispute over the exact amount due, the Army should pay any undisputed amount and Plaskett should file a "petition for enforcement or clarification of the amount in dispute." The order thus plainly envisions that a *further* process will need to take place to determine what additional sum, if any, is due to Plaskett.

Plaskett's complaint fails to plead sufficient facts to show that the process contemplated by the October 2017 order has been completed and that a certain amount of additional backpay is now clearly owed to him. Instead, the complaint appears to rest on the premise that, because the Army inexcusably failed to complete that process within the 60 days specified in the October 2017 order, the Army has forfeited all objections on this score and therefore must pay the full $21,020.01 demanded by Plaskett. But nothing in the October 2017 order (or in anything else that Plaskett has cited) establishes that this consequence follows from the Army's failure to respond in time. On the contrary, when Plaskett called the Army's oversight to the attention of the EEOC, it did not order payment of $21,020.01 but instead directed the Army to issue a "compliance report" within 20 days.

Judicially noticeable materials in the record further underscore Plaskett's failure to plead facts establishing a

plausible inference that the uncertain and indeterminate entitlement to additional backpay referenced in the October 2017 order has crystalized into a fixed obligation to pay a sum certain. In particular, the parties' correspondence over this issue in the period leading up to the filing of this action confirms that the parties disagree as to whether Plaskett has supplied the necessary documents to allow a determination as to whether moonlighting income was improperly offset in calculating Plaskett's previous backpay award.[6] Plaskett has pleaded no facts plausibly showing that he has provided the Army with the requisite documents, thereby establishing his entitlement to additional backpay. Nor has Plaskett pleaded facts showing that the EEOC has taken a position on this dispute, and the judicially noticeable materials concerning the parties' interactions with the EEOC do not indicate that either. Rather, the dispute was presented to the EEOC in connection with Plaskett's petition for enforcement, which was docketed in May 2018. *See supra* at 12. However, the EEOC dismissed that petition in January 2020 on the ground that, "upon the filing of [this] civil action in October 2018, the Commission's jurisdiction over the complaint ceased."

It is thus clear that Plaskett has failed to plead—and, if given leave to amend, he could not plead—that any inchoate entitlement to additional backpay contemplated by the October 2017 order has been reduced to a "clear and certain"

---

[6] We do not take judicial notice of the truth of the factual assertions contained in the parties' correspondence with one another or with the EEOC, but only of the fact that the parties have *made* these competing representations. No party has disputed the authenticity of the documents, and neither side has objected to the requests for judicial notice made by the other. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–90 (9th Cir. 2001). We accordingly also grant Plaskett's request for judicial notice of certain materials from the administrative record.

claim for performance of a "'nondiscretionary, ministerial'" duty to pay a determinate sum of any size. *Agua Caliente Tribe*, 932 F.3d at 1216 (citation omitted).

**B**

Plaskett nonetheless contends that, for two reasons, the Army should be barred from contesting that it owes him $21,020.01 in additional backpay. The district court properly rejected both arguments.

First, Plaskett contends that the Army effectively conceded that it owed him that amount. Plaskett notes that an Army attorney stated, in an internal email in 2014, that Plaskett's request for additional backpay appeared to be "backed up by documentation from his employers." Plaskett further notes that the Army did not affirmatively contend, in opposing Plaskett's 2015 appeal to the OFO, that Plaskett was owed nothing, and the Army did not call attention to its moonlighting regulation until after that appeal had already been filed. Moreover, the Army's opposition to the appeal blamed Plaskett for being tardy in submitting documentation and expressed the view that "the additional backpay should be forthcoming." None of these actions amounts to either a binding concession as to Plaskett's position or a waiver of the Army's objections. Indeed, the EEOC itself plainly did not read the record the way Plaskett does, because in its October 2017 ruling on the 2015 appeal, it emphasized the lack of supporting documentation in the record and the need for the parties to work together to ascertain any additional amount owed. *See supra* at 12. On this record, Plaskett has provided no plausible basis for concluding that the Army waived its objections to the adequacy of Plaskett's documentation or to the correctness of his claim for additional backpay. *See Groves v. Prickett*, 420 F.2d 1119, 1126 (9th Cir. 1970) (noting that a claim is waived when a

litigant's conduct is "clear, decisive and unequivocal of a purpose to waive the legal rights involved" (citation omitted)).

Second, Plaskett asserts that the doctrine of laches bars the Army from contesting the amount of backpay due. According to Plaskett, the Army "failed to seek in a timely fashion" the "documents it now claims are necessary" under the applicable regulations, and due to the passage of time, those documents "may no longer exist." But as the party asserting an entitlement to additional backpay, Plaskett at all times had the burden to establish that he was entitled to that money in accordance with the applicable law and regulations. Here, the relevant regulations are all public documents and, before presenting a claim for additional backpay, Plaskett and his counsel would be expected to consult those regulations in order to ensure that they could satisfy all of their requirements and that Plaskett had a good-faith basis for requesting additional backpay. At least with respect to the essential elements of his own claim for relief, a claimant such as Plaskett cannot invoke laches to complain that the opposing party failed to tell him what the applicable law was for the claim he was asserting against it. It may be that laches might come into play in connection with the belated assertion of an affirmative defense. *Cf. O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1067 (9th Cir. 2006) (considering whether a belated assertion of a "statute of limitations defense" was barred by laches but finding that the requisite prejudice was not established). But as the district court correctly recognized, a plaintiff cannot invoke the doctrine based on the premise that the plaintiff was prejudiced by its opponent's supposed failure to inform it about the plaintiff's own burden of proof under the law. *See Halcon Int'l, Inc. v. Monsanto Australia Ltd.*, 446 F.2d 156, 159 (7th Cir. 1971) (stating that laches "is a shield of

equitable defense rather than a sword for the investiture or divestiture of legal title or right"); 30A C.J.S. *Equity* § 140 (2021) ("The doctrine of laches cannot be used as a means to obtain affirmative relief.").

Accordingly, Plaskett failed to state a claim under either 28 U.S.C. § 1361 or APA § 706(1) for the payment of additional backpay, and the district court properly dismissed Plaskett's first cause of action.

**IV**

In contrast to his claim for additional backpay, Plaskett's claim for payment of the sanctions award presents only a pure question of law concerning the scope of the Government's sovereign immunity.  If that immunity has been waived, it is indisputable that Plaskett has properly asserted a claim, because then the Army would have a clear, certain, and ministerial duty to pay that sum to Plaskett, and the district court would have jurisdiction over that claim. The only question, therefore, is whether the district court correctly concluded that the Army's sovereign immunity had not been waived.  Although we agree with the district court's conclusion, our reasoning differs.

"The United States, as sovereign, is immune from suit save as it consents to be sued," *United States v. Sherwood*, 312 U.S. 584, 586 (1941), and the courts "strictly construe" any such "waivers of sovereign immunity," *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 840 (9th Cir. 2012).  Here, the district court concluded that the Government's sovereign immunity from monetary sanctions imposed by the EEOC had not been waived because the applicable EEOC regulation—29 C.F.R. § 1614.109(f)(3)—"lack[ed] a 'clear statement' that the United States has waived sovereign immunity to permit the

imposition of monetary sanctions against the Army in administrative proceedings." In our view, the district court asked the wrong question.

It is well settled that "[o]nly Congress enjoys the power to waive the United States' sovereign immunity." *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1090 (9th Cir. 2007). Accordingly, the Supreme Court has long held that, as a "critical requirement firmly grounded in [its] precedents," a "waiver of the Federal Government's sovereign immunity must be unequivocally expressed *in statutory text*." *Lane v. Peña*, 518 U.S. 187, 192 (1996) (emphasis added); *see also FAA v. Cooper*, 566 U.S. 284, 290 (2012) ("We have said on many occasions that a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." (citation omitted)). Consistent with this overwhelming authority, we have squarely held that, because a "regulation" is "not [an] act[] of Congress," it "cannot effect a waiver of sovereign immunity." *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011); *see also Heller v. United States*, 776 F.2d 92, 98 n.7 (3d Cir. 1985) (holding that "government regulations alone, without the express intent of Congress, cannot waive sovereign immunity").

Plaskett notes that we have upheld the imposition of monetary litigation sanctions by courts under the Federal Rules of Civil Procedure, *see Mattingly v. United States*, 939 F.2d 816, 818–19 (9th Cir. 1991) (Rule 11 sanctions); *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910–11 (9th Cir. 1986) (discovery sanctions under Rule 37(b)); *cf. United States v. Woodley*, 9 F.3d 774, 781–82 (9th Cir. 1993) (holding that neither local rules, supervisory power, nor FED. R. CRIM. P. 16(d)(2) authorized sanctions awarded against the Government in that case), and he argues that

administrative agencies must be deemed to have similar authority to impose sanctions by regulation.  But as Plaskett recognizes, any power to award monetary litigation sanctions under the Federal Rules of Civil Procedure draws upon both the authority delegated to the Supreme Court under the Rules Enabling Act, *see* 28 U.S.C. § 2072, and also upon the inherent authority of the courts to control the proceedings before them.  We have construed the latter authority as including a limited power to waive the Government's immunity from sanctions, *see Woodley*, 9 F.3d at 782 ("Sovereign immunity does not bar a court from imposing monetary sanctions under an exercise of its supervisory powers."); *cf. Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) ("'[I]n narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel.'" (citation omitted)), and in that respect it is perhaps unsurprising that we have recognized, under appropriate provisions of the federal rules, an authority to impose monetary sanctions on the Government.  But in this regard an administrative agency simply does not stand on the same footing as an Article III court.  "An administrative agency possesses no such inherent equitable power, however, for it is a creature of the statute that brought it into existence; it has no powers except those specifically conferred upon it by statute."  *Int'l Union of Elec., Radio & Mach. Workers v. NLRB*, 502 F.2d 349, 352 n.* (D.C. Cir. 1974) (opin. of MacKinnon, J.); *see also HTH Corp. v. NLRB*, 823 F.3d 668, 679 (D.C. Cir. 2016) ("As a creature of statute the Board has only those powers conferred upon it by Congress.").

Accordingly, whether the Army's sovereign immunity has been waived here turns on whether an applicable waiver has been "unequivocally expressed in statutory text." *Lane*, 518 U.S. at 192.  Moreover, even when Congress has waived

the Government's sovereign immunity by statute, the "scope" of that waiver "will be strictly construed . . . in favor of the sovereign." *Id*. That means that, before a particular type of monetary exaction may be sought against the Government, an applicable statutory waiver must be identified that "extend[s] unambiguously to such monetary claims." *Id*.

In contending that the Army's immunity from monetary litigation sanctions has been waived, the only statute on which Plaskett relies is § 15 of the ADEA. *See* 29 U.S.C. § 633a. That statute establishes a general requirement that federal personnel decisions "shall be made free from any discrimination based on age," *id*. § 633a(a), and it authorizes the EEOC to enforce that requirement "through appropriate remedies, including reinstatement or hiring of employees with or without backpay, as will effectuate the policies of this section," *id*. § 633a(b). It also gives the agency authority to issue "such rules, regulations, orders, and instructions as it deems necessary and appropriate to carry out its responsibilities under this section." *Id*. An aggrieved plaintiff may invoke this administrative option (as Plaskett did here), "and then file a civil action in federal district court if he is not satisfied with his administrative remedies." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5 (1991).[7] If, as here, the plaintiff is generally satisfied with the findings and remedies provided by the administrative process, he or she can file "an enforcement action against the agency," but in

---

[7] Alternatively, the plaintiff "can decide to present the merits of his claim to a federal court in the first instance," after giving the required pre-suit notice to the EEOC. *Stevens*, 500 U.S. at 6; *see also* 29 U.S.C. § 633a(c), (d). The court presented with a de novo civil action under either route has the authority to award "such legal or equitable relief as will effectuate the purposes of this chapter." 29 U.S.C. § 633a(c).

such an action the "prevailing employee may not challenge the [EEOC's] decision regarding either discrimination or what it found to be appropriate remedies." *Carver v. Holder,* 606 F.3d 690, 696 (9th Cir. 2010).

Plaskett first claims that a sufficient waiver of the Government's immunity against monetary litigation sanctions may be found in § 15's express statement that the EEOC may impose "appropriate remedies, including reinstatement or hiring of employees with or without backpay, as will effectuate the policies of this section." 29 U.S.C. § 633a(b).  We reject this contention.  The statute's reference to "appropriate remedies" is unmistakably a reference to remedies for the "discrimination based on age" that is made unlawful by § 15(a).  That is confirmed by the specific examples that the statute gives—namely, "reinstatement," "hiring," and "backpay"—all of which provide redress for such underlying discrimination.  A monetary litigation sanction, by contrast, serves as a "remedy" for "a violation of a discovery order" or other litigation-related rule.  *See Woodley*, 9 F.3d at 782.  The express authority to impose monetary "remedies" that redress discrimination (such as "backpay") is not the same as an authority to impose monetary remedies to redress litigation misconduct.  This aspect of § 15 thus does not supply the necessary clear waiver of immunity that would explicitly extend to this distinct, latter category of monetary claim.  *Lane*, 518 U.S. at 192.

Plaskett also notes that § 15 authorizes the EEOC to "issue such rules, regulations, orders, and instructions as it deems necessary and appropriate to carry out its responsibilities" and that it requires federal agencies to "comply with such rules, regulations, orders, and instructions." 29 U.S.C. § 633a(b).  These provisions cannot

supply the requisite waiver of sovereign immunity either. As we have recognized, the Supreme Court has consistently affirmed that "a waiver of sovereign immunity must be 'unequivocally expressed' *in statutory text.*" *Cooper*, 566 U.S. at 290 (emphasis added) (citation omitted). Because Congress thus must itself supply the requisite waiver through clear statutory text, a boilerplate delegation of general enforcement authority to an agency, untethered to any relevant explicit statutory waiver of sovereign immunity, cannot be thought to provide such a waiver. To hold otherwise would be to allow the necessary waiver to be expressed in "statutory text or regulations," and that would be contrary to long-established Supreme Court authority and to our decision in *Tobar*. And to rely on a general grant of enforcement authority, as opposed to an express power to impose monetary exactions, would violate the rule that a waiver of sovereign immunity "may not be inferred, but must be 'unequivocally expressed.'" *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (citation omitted).

Finally, Plaskett contends that, if the EEOC cannot impose monetary litigation sanctions against the Government, then it will be unable to effectuate its authority over its own proceedings. This policy concern cannot overcome the settled caselaw cited above, but in any event, its premise is incorrect. The Government here expressly concedes that the EEOC can impose a variety of nonmonetary sanctions, "such as by drawing adverse inferences, by excluding evidence, or by taking other action during the adjudication of a claim." This range of potent sanctions gives the agency ample authority to ensure that the Government, as a litigant in EEOC proceedings, acts in conformity with lawful rules and orders of the agency.

Because Congress has not "unequivocally expressed in statutory text" that the EEOC may award monetary litigation sanctions against the Government, sovereign immunity precludes enforcement of the award levied by the EEOC in this case. *Lane*, 518 U.S. at 192.  The district court therefore properly dismissed Plaskett's second cause of action.

### V

The district court's judgment dismissing this action is **AFFIRMED.**

SCHROEDER, Circuit Judge, concurring:

I agree that the district court's denial of relief should be affirmed.

Plaskett cannot succeed on his claim for additional backpay because he failed to show that the amount he seeks represents moonlight earnings improperly deducted as replacement income.  This is the correct result whether we look to the allegations of the complaint, as the majority does, or look through to the record before the EEOC, as the district court did.

With respect to sanctions, there is no legal authority that authorizes the EEOC to impose monetary sanctions against the government for discovery violations.  There is a broad statutory waiver of sovereign immunity that subjects the government to liability for violating the ADEA, and requires it to abide by the EEOC regulations enforcing the statute.  As to ADEA liability, the statute in material part provides:

> All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age.

29 U.S.C. § 633a(a).

As to compliance with EEOC regulations enforcing the statute, the statute further provides:

> [T]he [EEOC] is authorized to enforce the provisions of subsection (a) through appropriate remedies, including reinstatement or hiring of employees with or without backpay, . . . [and to] issue such rules, regulations, orders, and instructions as it deems necessary and appropriate to carry out its responsibilities under this section.
>
> . . .
>
> The head of each such department agency, or unit shall comply with such rules, regulations, orders, and instructions of the [EEOC] . . . .

*Id.* § 633a(b).

Under this statutory authority, the EEOC promulgated a regulation that allows administrative law judges to sanction parties who fail to respond to discovery requests. It lists sanctions that allow ALJs to draw adverse inferences, to exclude other evidence, and to "[t]ake such other actions as appropriate." 29 C.F.R. § 1614.109(f)(3). The list does not expressly include monetary sanctions. The law of this Circuit is clear that absent express authority, monetary

sanctions may not be imposed against the government.  *See United States v. Woodley*, 9 F.3d 774, 792 (9th Cir. 1993).

The EEOC thus lacks express authority under either its regulations or the statute.  We therefore need not decide whether—given the broad statutory waiver of sovereign immunity authorizing the EEOC to enforce the ADEA against the government—that express authority must be by a statutory amendment or whether an amendment to the EEOC regulations would be sufficient.

For these reasons, I agree with the majority's conclusion that Plaskett is not entitled to any of the relief he seeks.